IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

WESTERN DISTRICT—PITTSBURGH 1860.

### Arbuckle *versus* Thompson.

*General Answer to Points.—Reciprocal Rights and Liabilities of Consignee and Carrier.—Bills of Lading.*

1. Where the points presented to the court below are fully answered in the general charge to the jury, it is sufficient without a separate and detached response to each; and when this is done, those that are not answered may be considered as negatived by the court.

2. The consignee of goods delivered to a common carrier, for transportation, has such property therein as to enable him to maintain an action for a failure to transport or deliver them, and especially where there is no evidence whatever of ownership in the consignor.

3. The bill of lading or receipt of the carrier is sufficient to establish such a *primâ facie* case of ownership, as will enable a party holding it to sustain an action for a breach of the contract on the part of the carrier.

4. A carrier may be relieved from his obligation to deliver goods *at one place* by the consent of the consignee to receive them *at another;* but an offer to receive them on certain conditions, which was refused, will not operate to relieve the carrier from his contract to deliver them at the point to which they were consigned.

ERROR to the Common Pleas of *Crawford county.*

This was an action brought before a justice of the peace, by O. Colburn against Prestly Arbuckle and V. M. Thompson, forwarding and commission merchants, at Erie, and owners of a line of canal-boats from that place to Meadville.

On the 6th of November 1856, Colburn, who resided in Meadville, shipped from New York, through "The American Transportation Company," in good order, a quantity of furniture,

[Arbuckle *v.* Thompson.]

marked with his name and residence, and consigned to Arbuckle and Thompson, at Erie.

The goods reached Erie in due time, but in a damaged condition, and after the canal to Meadville had closed.

On the arrival of the goods at Erie, November 26th 1856, defendants wrote to their agent at Meadville, informing him of these facts, and that the freight charged to Erie was $9.45, and directing him to inform Colburn that they could not receive the goods without paying these charges, and that they would not receive them unless Colburn would agree to repay them at Meadville. Colburn, without referring to this letter, replied on December 9th 1856, complaining that the charges were too high, offering to allow $1.50 per cwt., and proposing to send to Erie for the goods, if "The American Transportation Company" would deduct what Thompson, one of the defendants, thought the damages were; stating also that if the matter could not be settled in this way, he would "have it settled in another form;" but he gave no instruction as to receiving or rejecting the furniture. In the mean time defendants had received the goods, and paid the charges—receipting for them as "in bad order." The agent of the company allowed $3 for injury done to a sofa by the company's agents, but would allow nothing for any other alleged injury.

When the navigation opened, in the spring of 1857, Colburn sent to Erie for the goods, instructing his agent not to pay the eastern charges, but to have them deducted for damages. The defendants refused to deliver the goods on these conditions, whereupon this suit was brought to recover their value, and came into the Common Pleas of Crawford county, by appeal.

On the trial, in the court below, the following points were submitted by the plaintiff:—

1. That, if the goods were damaged by the carriers, or while in their custody, such damage is a set-off against charges for freight.

2. That, if the defendants received the goods as commission and forwarding merchants, they were bound to forward them to their place of destination, and could not stop them *in transitu*, and demand payment of freight-charges before they reached their destination.

3. That the defendants, as common carriers, were bound to deliver the goods at their place of destination, and the conditional offer of the plaintiff to take the goods at Erie, not accepted by the defendant, does not relieve them from such obligation. Nothing but actual delivery will release them.

4. That, if the goods were shipped to the plaintiff, at his place of residence, and his name marked on the same and on the bill of lading, it is sufficient evidence of plaintiff's title to the goods in the absence of any evidence to the contrary.

[Arbuckle *v.* Thompson.]

5. That the rule of damages is the value of the goods at the place of delivery.

6. That there is no evidence of a contract in this case to submit to the jury, which would relieve them from the liability as carriers and forwarding merchants.

The defendants requested the court to instruct the jury—

1. That the plaintiff has not shown property in himself, so as to enable him to maintain his action.

2. That the proposal of plaintiff, shortly after the goods came to possession of defendants, and after they had informed him of their damaged condition, that he would send for them, released defendants, as consignees, from forwarding them, and as carriers from bringing them to Meadville.

3. That the goods having arrived at Erie after the close of navigation to Meadville for the season, remained there in the custody of defendants of necessity; and that under the instructions of plaintiff, under date of December 9th 1856, and he having sent for them on the opening of spring navigation, he is to be treated in this issue as having elected to receive them there, and to have released defendants from their implied engagement, both as consignees and carriers, to forward them to Meadville.

4. That, as against defendants, plaintiff cannot set off damages for injury done to the goods before they came to their possession.

5. That plaintiff having, through his agent, Knapp, when he demanded the goods, refused to reimburse defendants the freights they had paid on receiving them, they were excused from delivering them, and plaintiff cannot recover.

6. That the measure of damages is the value of the goods when they came into defendants' possession.

The court below (DERICKSON, P. J.), after stating the facts of the case, charged the jury as follows:—

" The fact of the articles being marked with the plaintiff's name and place of residence, affords *primâ facie* evidence of ownership in him sufficiently to entitle him to sustain his action, if, in all other respects, his right to recover be made out. This, he contends, has been done. The furniture has never been forwarded to him, and for this omission of duty he claims to recover its value. *The defence is, that navigation having closed in the canal before the furniture came into defendants' possession, excused them till it reopened the following spring from sending it on, and that, in the mean time, a new contract or agreement was made by the parties by which the plaintiff was to take it at Erie, and thus exonerate them from sending it forward.* If the first fact existed, it affords a sufficient excuse for the time being. How was it as to the second alleged one ?—The evidence is furnished, in the main,

[*Arbuckle v. Thompson.*]

by the letters of the plaintiff and the testimony of Hearn and Knapp. The furniture reached Erie the last of November; on the 9th of December the plaintiff writes to the defendants, saying, he had heard, through Mr. Reynolds, of its arrival there in a damaged condition, and directs them what to do in the way of adjusting the damages, and for them to advise him of the result as early as they conveniently could. No reply was made; but *the evidence in defence is, that the defendants compromised the damages with the agent of the American Transportation Company at less than one-fourth of what the injury to the furniture is proven to have sustained.* At what time the compromise was made, whether before or after the receipt by the defendants of the plaintiff's letter, or whether the amount received by them, in pursuance thereof, was greater or less than the cost of transportation, nowhere appears. Nothing more is said or heard of the matter till the 23d of April following, when the plaintiff requested Knapp, who was running a boat on the canal, to call on the defendants and get the furniture. This Knapp says he did about the 25th of that month, but the defendants declined giving it to him until the expenses were paid; but gave no bill or amount of them. This, they say, excused them from forwarding the goods, and justified them in holding on to them till the expenses were paid them. If they were in the business designated, they were bound to forward the goods without any unreasonable delay, and if the plaintiff requested another person to call and get them, they could not be required to give them up unless their reasonable charges and expenses were paid; but, as previously stated, they did not say what they were, or whether the money received by them for the damages was or was not sufficient to cover them. The two letters of December and April did not make a contract excusing the defendants from forwarding the goods, as they do not appear to have replied to them, or done any act indicative of compliance with the request made, unless it be in the compromise of the damage-money, as above mentioned, and the refusal to Knapp to let him take the goods. *How, too, could the plaintiff, sending for the goods by Knapp, excuse the defendants' forwarding them on to Meadville by their own boats, after they had refused to give them up to the other, because the expenses were not paid? This latter act would not release them from prior implied engagement, as common carriers, &c., to send the furniture on, nor entitle them to hold on to it till the charges were paid.* If there was a contract releasing the defendants from further responsibility at Erie, or if the furniture had been brought by them to the place of destination, they could not have been required to deliver it up till their charges were paid them, unless they had been previously discharged. The value of the furniture is proven to have been $98, and the damage to it $25; and the plaintiff hav-

[Arbuckle *v.* Thompson.]

ing laid his claim before the justice at $67, the jury cannot go beyond it, except to allow interest on it from the time his right of action accrued. This valuation was made at Erie, and there is no other evidence in relation to it, or the extent of the injury, and by this we must be governed. Inasmuch, then, as the plaintiff has limited his claim to a sum below what the evidence shows the furniture to have been worth, in its damaged condition, it is unnecessary to consider what the defendants are entitled to set off damages for injury done to the goods before they came to their possession. If there was any evidence showing that the goods were of less value when they came to the defendants' possession in Erie, other than that of McHaffy's, it would have to be considered, but both parties having rested upon it, the jury have nothing else to guide them in making up their verdict. In the absence of this, the value of the goods at this place would have been the proper standard for assessing the damages."

The jury found in favour of the plaintiff $73.36, and judgment having been entered thereon, the defendants removed the case into this court, and assigned here for error:

1. That the court erred in not answering the points submitted by the defendant below.

2. In not answering the defendants' first point in the affirmative.

3. In not affirming the defendants' second, third, fourth, and fifth points.

4. In charging the jury as was done in the parts above printed in *italics*.

*H. L. Richmond*, for plaintiff in error.—1. Defendant was entitled to answers on all the points submitted by him to the court below: Geiger *v.* Welsh, 1 Rawle 349; Coats *v.* Roberts, 4 Rawle 100.

2. The plaintiff has not shown property in himself, so as to maintain the action. The only proof was the receipt from "The American Transportation Company," to one C. Peck, with the name of Colburn underwritten: Hand *v.* Bayner, 4 Whar. 215; Davis *et al. v.* James, 5 Burr. 2680.

3. The second, third, fourth, and fifth points should have been affirmed. The transit of the goods was arrested by an act of Providence, the freezing of the canal; and they were not bound to send them any other way. Colburn was informed of this and of the charges, and instructions demanded. None were given for ten days; and in the meanwhile plaintiffs had received the goods, paid the charges, deducting all they could for damages. Plaintiff never directed the goods to be sent on in the following spring, but sent for them himself. This discharged the defend-

[Arbuckle v. Thompson.]

ants from their obligation to deliver them at Meadville: Reed v. Dick, 8 Watts 482.

4. The instruction to the jury was wrong in point of fact. The defence was not put on the ground of a new contract, but was as above stated.

5. The court do not quote the testimony properly in this part of the charge. The witness says the $3 were allowed to cover the damages to one article of the lot, which was the only one which, as far as he knew, the company had injured.

6. A carrier is not bound to transport goods unless he receives his freight in advance, which includes advances made by him to others on receiving goods. This Colburn refused to do, even on delivery at Meadville.

*Finney* and *Douglas*, for defendant in error, contended:—
1. That courts are not bound to answer the points submitted, in the words of the proposition, if the general charge be full: Geiger v. Welsh, 1 Rawle 349; Coats v. Roberts, 4 Rawle 112; Wilkins v. Williams, 10 Casey 312.

2. The evidence of ownership was the bill of lading, and the fact that the goods were directed to O. Colburn; this was sufficient: Hands v. Baines, 4 Wh. 215; Griffith v. Ingledew, 6 S. & R. 429; Humphrey v. Reed, 6 Wh. 441.

3. The agent of defendant did not communicate the contents of their letter to Colburn, nor did they wait until they could communicate with him, but received the goods on their arrival at Erie, and paid the charges, when they must have seen that they were damaged to more than what the freight was worth. The proposition to send to Erie for the goods was not accepted by them, and they were not, therefore, discharged from this contract: Hemphill v. Chenie, 6 W. & S. 62; Ostrander v. Brown, 15 Johns. 42.

The opinion of the court was delivered, October 25th 1860, by
STRONG, J.—It is doing but simple justice to the Court of Common Pleas to affirm that all the propositions presented by the plaintiffs in error, which could have been affirmed, were substantially answered in the charge delivered to the jury. It was not, indeed, as separate and detached points, but in the comprehensive presentation of the case which the learned judge made. And this is generally the best and most instructive mode in which legal principles can be presented to a jury. It is intelligible, and exhibits to the jurors as well the principles as their bearing upon the facts in evidence. Nor is it unjust to the party who has asked specific instructions. If the points are not answered, he may consider them as negatived, and in this court,

[Arbuckle *v.* Thompson.]

therefore, the question will be whether they should have been affirmed.

Applying this rule to the present case, the question is, whether the defendants below, now plaintiffs in error, were entitled to an affirmance of their several propositions. They asked the court to instruct the jury that the plaintiff had not shown property in himself, so as to enable him to maintain his action. The furniture, for the non-delivery of which the suit was brought, was shipped in New York, marked O. Colburn, Meadville, Pennsylvania, care Thompson & Arbuckle, Erie, Penn. Thompson & Arbuckle were forwarding and commission merchants at Erie, and common carriers between Erie and Meadville. Now that a consignee of goods delivered to a common carrier for transportation may maintain an action for failure to transport or deliver them, seems hardly to admit of doubt. The doubt has rather been whether the action could be maintained in the name of the consignor. And though it has been ruled that it may be, when the property in the goods is proved to have remained in the consignor, yet this is not at all in conflict with the right of the consignee to sue when there is no such proof of ownership. Here there was no other evidence of ownership than what was furnished in the bill of lading or receipt of the carrier, and these established a *primâ facie* case of ownership in the plaintiff, sufficient to enable him to maintain the action : 6 Clark & Fin. 600 ; Dutton *v.* Solmonson, 3 B. & P. 582 ; Jacobs *v.* Neilson, 3 Taunt. 423 ; Dawes *v.* Peck, 8 T. Reps. 300. This was the charge of the Court of Common Pleas, and the charge is not open to just exception.

The third, fourth, and fifth assignments are very properly considered as one by the plaintiffs in error. They are, in substance, that the court refused to charge that the plaintiff below having informed the defendants that he would send to Erie for the goods, and having sent for them in the spring when navigation opened, and having refused to reimburse the defendants the previous freight they had paid, they were excused from delivering them. These points present only a part of the facts proved. There was no evidence that the plaintiff informed the defendants that he would send to Erie for the goods. He only promised to do so if the former carriers would allow the damages which the defendants thought right, and charged only a specified sum for freight. Neither of these things were done, and as the promise was made dependent upon the performance, it was no justification for refusal or neglect to deliver the goods at Meadville. Still less was the offer to receive them at Erie, refused by the defendants, unless upon terms imposed by themselves, a justification for non-compliance with their contract. The obligation of the contract was to carry the goods to Meadville. Doubtless if Colburn had received them at Erie, the carriers would have

[Arbuckle v. Thompson.]

been discharged; but an offer to receive them on certain condi-
tions, not accepted by the defendants, and accompanied by a
refusal to deliver them on those conditions, was wholly inopera-
tive to relieve the carriers from the performance of their con-
tract. We need not say that the attempt to extort in advance
from the plaintiff freight which they had wrongfully paid, coupled
as it was with his refusal to submit to the extortion, was no
release of the defendants from their contract. The court, there-
fore, were perfectly right in refusing to affirm the third, fourth,
and fifth points propounded by the plaintiffs in error.

There is nothing in the remaining assignments, and they need
no discussion. It is said the defence was not put upon the
ground of a new contract, but on the ground that the contract
for carriage was superseded by the stoppage of goods in conse-
quence of frost, and the subsequent conduct of the plaintiff by
which the defendants were released. What is that but a new
contract? If the plaintiff discharged the defendants, it was done
by agreement. Even a receipt of the goods at Erie, if they had
been there received, would have been important only as showing
that the plaintiff agreed to relieve the defendants from their
obligation to deliver them at Meadville. None of the assign-
ments of error are sustained, and the judgment must therefore
be affirmed.

Judgment affirmed.