## O'ROURKE v. THE C., B. & Q. R. COMPANY.

1. **Common Carrier**: TRANSPORTATION OF GOODS: WHEN MISDIRECTED. Where goods are by mistake directed to a point which has no existence in fact, the carrier is not bound to undertake their transportation, but if it does so it becomes liable as a common carrier until the delivery of the goods, even though as a matter of fact they may be left at some station along its line.

2. ———: CONTRIBUTORY NEGLIGENCE: WHEN IT DOES NOT EXCUSE NEGLIGENCE OF CARRIER. When the negligence of the party asking damages is known to the defendant, the latter is liable for the consequences of the act causing the injury or loss, notwithstanding the contributory negligence of the plaintiff.

*Appeal from Lucas Circuit Court.*

MONDAY, OCTOBER 23.

ACTION at law. The petition alleges that plaintiff on the 18th day of June, 1874, delivered to the Kansas City, St. Joseph & Council Bluffs Railroad Company, at St. Joseph, a box of household goods to be transported by the way of Hopkins to Albia, in this State, receiving a receipt therefor, of which the following is a copy:

"Kansas City, St. Joseph & Council Bluffs R. R. Co., received of John O'Rourke, in apparent good order, except as below specified, the under named articles marked as per margin, which we propose to deliver without unnecessary delay, in similar order to John O'Rourke, or order, at the regular station at Hopkins on payment of freight, at the rate of........ and charges.

DATED AT ST. JOE STATION, June 18, 1873.

| MARKS. | ARTICLES. | WEIGHT. |
|---|---|---|
| John O'Rourke, Alvey, Iowa, *via* Hopkins. | 1 Box H. H. Goods  Released. | 420. |

R. J. WELLS, W. Agent K. C., St. Joe & C. B. R. R. Co."

The petition further alleges that "defendant received said box of goods at the town of Hopkins, to be transported by

them on their line of road to the place of destination; that defendant has never delivered said box of goods to the plaintiff, althought often requested to do so, but has been negligent therein, and has wrongfully converted the same to its own use and refuses to deliver the goods to plaintiff."

The petition further shows that the railroads of the K. C., St. J. & C. B. R. Co. and of defendant connected at Hopkins, and that through the mistake of the agent of the first named company the place of destination of the goods was written *Alvey* instead of Albia in the receipt.

The abstract upon which the case is submitted states the substance of the answer in the following language:

"Denies that the said agent of said St. Joseph & Council Bluffs Railroad made any mistake in billing said goods, or in receipting for the same; that if any mistake was made in the shipment of said box, it occurred and was made by the said John O'Rourke, the shipper thereof; that the said John O'Rourke delivered said goods to said agent and expressly and distinctly requested him to ship the same to him at "Alvey," Iowa, *via* Hopkins and Creston; that said agent then and there executed and delivered to the said John O'Rourke a receipt therefor; that the defendant received said box at Hopkins, Missouri, from the St. Joseph & C. B. R. R. Company; that it was plainly and distinctly marked and billed to John O'Rourke, at "Alvey," Iowa, *via* Creston, Iowa; that defendant had no knowledge or notice whatever when it received said box of any mistake having been made in the billing or shipment of the same; that it carried said box to Creston, Iowa, but was unable to ship it from that place for the reason that there was no station on its road by the name of "Alvey," and defendant could not from the direction and bill of said box ascertain where to send it; that, Creston being one and the only place on its road named in the bill, defendant unloaded said box at that place and placed the same in its warehouse, where such boxes and goods are usually placed and kept; that said goods remained in said warehouse for the space of......days, during which time the defendant made diligent efforts to ascertain the residence of the owner thereof,

and the place or point where it should be sent; that inquiries were made at a station on defendant's road by the name of Albia, and also from the St. Joseph & C. B. R. R. Agent· at St. Joseph, but defendant was unable to ascertain where said box was intended to be sent; that on or about the......day ..........., 1873, while said box then stood in said wareroom, the said wareroom,.by accident and without any negligence or fault of defendant, caught fire and burned together with its contents, including said box of goods. That the loss of said goods is attributed, alone, to the negligence of John O'Rourke, who shipped the same, in causing the said goods to be directed and shipped to *Alvey*, Iowa."

The case was tried to a jury and a general verdict was rendered for plaintiff, with the following special findings as answers to interrogatories propounded by the court:

"1. Did the defendant, prior to the shipping of the goods from Hopkins, make reasonable effort to ascertain where Alvey, Iowa, was? Answer, no.

"2. Did defendant write to St. Joe, Missouri, to obtain better directions for shipping prior to shipping from Hopkins? Answer, no.

"3. Was said box so marked that defendant could with reasonable diligence have ascertained its destination? Answer, yes.

"4. If there was a mistake in the marking of said box, was that the proximate and immediate cause of the loss of the box? Answer, no.

"5. Does not the evidence show that when said box was received by defendant's agent at Hopkins it was marked and directed to John O'Rourke, Alvey, Iowa, *via* Hopkins? Answer, yes.

"6. Was the word Creston one of the points named on said box? Answer, no.

"7. Was defendant negligent in shipping the box from Hopkins and afterwards storing it at Creston? Answer, yes.

"8. Did defendant know the manner in which said box was marked at the time it was shipped from Hopkins? Answer, yes.

" 9. Does not the evidence further show that in consequence of the improper marking and billing of said box defendant failed to ascertain its proper destination? Answer, no.

" 10. Does not the evidence further show that, having failed to find the proper destination of said goods, they for that reason stored them in their wareroom at Creston, the usual place of storing goods, and that they were afterwards accidentally destroyed by fire? Answer, no.

" 11. Does not the evidence show that when said box was received by defendant's agent it was marked and directed to John O'Rourke, Alvey, Iowa, via Hopkins and Creston? Answer, no. Creston was not on the box.

" 12. Does not the evidence further show that defendant's agents used and made reasonable efforts to ascertain the proper destination of said box? Answer, no.

" 13. Does not the evidence in this case show that the mistake or negligence of plaintiff's son, who shipped said goods for her, contribute to cause the injury of which she now complains? Answer, no."

A judgment was rendered for plaintiff upon the verdict, and a motion for a new trial was overruled. Defendant appeals.

*Stuart & Bartholomew*, for appellant.

*Dungan & Crane*, for appellee.

BECK, J.—I. Evidence was introduced by the parties under the issues tending to establish the facts respectively pleaded by each. The following among other instructions were given to the jury:

" 3rd. If you find that the box containing the goods was shipped from St. Joe, Mo., to Hopkins, a station on defendant's road, and directed to John O'Rourke, Alvey, Iowa, via Hopkins and Creston, and find there is no such place known as Alvey, Iowa, and that the defendant's agent at Hopkins, after proper examination, ascertained that there was no such place as Alvey, Iowa, then it would be the duty of the defend-

VOL. XLIV—34

ant to hold said goods in store until it could ascertain the true destination of the goods, unless from the similarity of the sound it would be evident that it was but mis-spelling the name Albia; but if the variance was so material as to render it doubtful that Albia was the destination meant, and was advised that no such person resided there or had inquired for goods at that station, it would have the right to hold said goods in store for the owner, and while so doing would be liable only as warehouseman, until such time as it was advised of their true destination, when it would become defendant's duty to forward them with reasonable dispatch; and from the time it was advised of their true destination it would become liable as a common carrier, and the fact that the goods were destroyed by fire would not prevent a recovery of the plaintiff, but while holding them as warehouseman it would not be liable for their destruction by an accident of fire not caused by defendant's negligence.

"4th. If you find that Creston was only used in the direction to designate the route over which the goods were to be carried, and that the same was evident from the direction, and not as a point of destination, then if the defendant's agent at Hopkins knew of such fact, or with reasonable care could have known the same, this would not authorize the defendant to forward them to Creston and place them in store at that point, and to do so would not relieve it from its liability as a common carrier.

"5th. But if you find that the goods were so marked as to render it reasonably probable that Creston might be a point of destination, then the defendant would have the same right to store them at that place as at Hopkins, and if so, would only be liable as warehouseman.

"8th. If you find the goods marked to Alvey, Iowa, then, prima facie, that would be the proper place to which they should be forwarded; but if you find that there was no such place, then the defendant would not be bound to forward them to some other point, unless advised with reasonable certainty that such point was their true destination, and under such circumstances it would be the duty of the defendant to store

the same in a reasonably safe place, and while so held in store the defendant would be liable only as warehouseman."

The first of the above instructions (the third of the series), was not excepted to in the court below, and no objection is

*1. COMMON carrier: transportation of goods: when mis-directed.* made to it in this court. It must be regarded as correct. The fourth, fifth and eighth, defendant's counsel insist are erroneous. They appear to us to be corollaries of the third. If it was defendant's duty, upon ascertaining that the destination of the goods could not be ascertained, to store them, thus assuming the obligation of a warehouseman, it violated its duty by sending them forward. If it undertook the transportation of the goods it became liable as a common carrier, and that liability only ceased upon the delivery of the property. The assumption of the duty of a carrier was voluntary, with the knowledge of the want of proper directions, and that the goods were consigned to a point not on defendant's road, or to a place that had no existence. Surely, the obligations of a carrier could not be thrown off at the will of defendant, and those of a warehouseman assumed, until the goods had reached the place of destination. But, it may be said that the goods were really without a place of destination; if that be so, it was defendant's duty to keep them in its warehouse at Hopkins, or to refuse to receive them from the connecting road. If Creston was not the place of destination of the goods, defendant had no right to take them there and put them in a warehouse. There is nothing to show that by transporting them to Creston, their place of destination could have been there better discovered. The findings of the jury upon this branch of the case are well supported by the evidence.

II. The defendant requested the court to direct the jury that, if they found the negligence of plaintiff or her agents

*2. ——: contributory negligence: when it does not excuse negligence of carrier.* contributed to the loss of the goods, she cannot recover. The instructions were not given, and it is insisted that the refusal was error. Counsel claim that the doctrine of contributory negligence applies to causes of this character. Conceding, for the purpose of the argument, but without deciding the point, the position

of counsel, the doctrine must be applied with all its modifications and exceptions.    One of these is that if defendant, or its agent, had knowledge of the act which is held negligent— that plaintiff's negligence was known to defendant—it is liable for the consequences of its act, notwithstanding plaintiff's negligence.    This exception is as well established as the rule itself.    The act of plaintiff which defendant relies upon as constituting negligence is the delivery of the box to the K. C., St. J. & C. B. R. Co., with an incorrect direction inscribed thereon, and permitting the goods to be taken for transportation, knowing that the agent of that company had written upon the package and papers accompanying it the name *Alvey* instead of Albia.

But that this negligent act, if such it may be considered, was fully and certainly known to defendant's agent at Hopkins when the goods were received and shipped is established by undisputed evidence.    The agent himself testifies that he "did not know any point on the C. B. & Q. R'y named *Alvey;* examined latest shipping guide and map of Iowa; could not find any such place."    It is true that he says, "I telegraphed shipping agents but did not receive any information, nor did I learn there had been any mistake in marking and shipping" the box; but when he saw a package marked *Alvey, Iowa,* and ascertained from the examination of the shipping guide and map of the State that there was no such place, he knew that there had been a mistake, notwithstanding he received no information from the shipping agent.    We conclude that it was established beyond dispute that defendant's agent had knowledge of the negligence of plaintiff when the goods were shipped to Creston from Hopkins on defendant's road.    In view of this fact, defendant was not relieved of liability on account of plaintiff's negligence.    If, therefore, the jury were not required to consider and pass upon plaintiff's negligence, by the instructions, no prejudice was wrought defendant, for had they been properly instructed on that point their verdict would not have been different.

III.    Defendant's counsel insist that the special findings of the jury are in conflict with the evidence.    Upon this point

we may remark generally, all of the findings that involve facts upon which is based the legal conclusion that defendant was not authorized to transport the box from Hopkins to Creston, but was required to keep the goods in its warehouse at the place first named, are well supported by the evidence. Such findings are the second, third, fourth, fifth, sixth, seventh, eighth, eleventh and twelfth.

It is unimportant to inquire whether the other findings are or are not in conflict with the evidence. These relate to the negligence of plaintiff. If the jury had found differently the result would have been the same, for, as we have seen, defendant is liable notwithstanding plaintiff's negligence.

The foregoing discussion disposes of all the questions presented in the case. In our opinion, the judgment of the District Court ought to be

AFFIRMED.