213    379<br>216    313

# Nicolette Lumber Company, Appellant, v. People's Coal Company.

*Common carriers—Demurrage—Lien—Detention of barges.*

A carrier of lumber on barges, even if he is a common carrier, has no lien on the lumber for demurrage for the delay in unloading the barges at their destination, and he has no right to retain possession of the lumber until such demurrage is paid. If he has sustained damage by reason of the delay he has his remedy by an ordinary action. There is no lien for demurrage unless it is stipulated for in the contract.

Argued Oct. 26, 1905. Appeal, No. 86, Oct. T., 1905, by plaintiff, from judgment of Superior Court, April T., 1904, No. 106, affirming judgment of C. P. No. 2, Allegheny Co., Oct. T., 1901, No. 832, on verdict for defendant in case of Nicolette Lumber Company v. People's Coal Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Appeal from judgment of Superior Court.

The facts appear by the opinion of the Supreme Court and by the report of the case in 26 Pa. Superior Court 575.

*Error assigned* was the judgment of the Superior Court.

*William M. Hall, Jr.,* for appellant.—There is no such thing known to the law as a lien for demurrage or use of the barges under the facts in this case: Grove v. Barclay, 106 Pa. 155; Chicago, etc., Ry. Co. v. Jenkins, 103 Ill. 588; Fuller v. Bradley, 25 Pa. 120.

*Henry A. Davis,* for appellee.—Where the owner neglects to remove his goods in a reasonable time the carrier's liability becomes that of a warehouseman, and a right of lien has always been one of a warehouseman's rights: Shenk v. Philadelphia Steam Propeller Co., 60 Pa. 109; McCarty v. N. Y., etc., R. R. Co., 30 Pa. 247.

OPINION BY MR. JUSTICE BROWN, January 2, 1906:

This is an action of replevin brought for the recovery of possession of lumber, which had been transported on barges of the defendant from the mill of the plaintiff in West Virginia to Pittsburg, under a freight contract of $2.00 per thousand feet. This charge was paid before the institution of the replevin and is not involved in the case. It seems there was a delay of some days after the lumber reached Pittsburg before the plaintiff or its consignees demanded the barges from the defendant for the purpose of taking them further up the Allegheny river to the point of delivery designated in the contract. The delay is alleged to have been due to the low state of the water, rendering navigation impossible. Be this as it may, the instructions to the jury were, that if the plaintiff or its consignees neglected to receive the barges upon their arrival at Pittsburg, after reasonable notice from the defendant to do so, it was entitled to a verdict for demurrage, for the reason that it had a lien on the lumber for such claim. Under these instructions there was a finding for the defendant for $525.40. On appeal from the judgment on this verdict the Superior Court affirmed it, holding that the defendant, as a common carrier, had a claim for demurrage which was a lien on the lumber, by virtue of which it had a right to retain the property until the amount of the lien was paid.

The question on this appeal is not as to the right of the appellees to demand and recover compensation for the detention of its barges, if they were unreasonably detained by the

appellant, but is as to its right of lien upon the lumber, entitling it to retain possession of the same until its alleged lien was paid. If it had such a lien, it was entitled to retain possession of the property until the lien was discharged; if it had not, it unlawfully detained the lumber from the plaintiff, even if its barges had been unreasonably detained.

In an action of replevin nothing can be tried but the right of possession of the property in controversy. In this case the lumber admittedly belonged to the plaintiff, which could not be denied the possession of it by the defendant, unless the latter had a superior right of possession. A mere claim for compensation for the prolonged use of its barges could give it no such right, unless the right to such compensation created a lien on the property on the barges—a lien on the lumber for the demurrage.

Even if it be conceded, as held by the Superior Court, that the appellee was a common carrier, by what rule of the common law, or by what statute, had it any such lien as it asserted and as the Superior Court recognized? The parties to the contract for carrying the lumber might have provided for it in their contract, and if so, the appellant would be bound by it; but there was no such agreement. That none exists in the absence of it is so well settled that we need do nothing more than call attention to some of the many authorities upon the subject.

When a shipper of goods commits them to a common carrier for shipment to a given point, he does so under a contract that fixed freight charges will be paid. The business of the common carrier is to carry freight, and to carry it for compensation to be paid either at the time of shipment or before the consignee is entitled to receive it. The amount to be paid is as well known to the shipper as to the carrier, and, as it is to be paid before the consignee receives the goods, it is a lien upon them until paid. But in the absence of any provision in the contract for demurrage, caused by the shipper or his consignee, it is not taken into account, for it is not reasonably to be anticipated in any case, either by the shipper or carrier. It is the exception in connection with the business of the common carrier, and, therefore, there is no rule of the common law applicable to it beyond the one that requires the delinquent shipper or consignee to pay for his detention of the cars, not anticipated

or provided for in the contract of shipment. This is the liability that attaches to every one to pay reasonable compensation for the use and occupation of the property of another not used or occupied in pursuance of any contract; but out of such a condition no lien on the personal property on the premises so used and occupied can arise, because, if for no other reason, the amount of the liability is not fixed. For what amount is a common carrier, in any case, to have a lien for demurrage when the amount to be paid for it has not only not been fixed by a contract, but is in dispute and is to be settled by a jury?

If any lien could exist in the present case, it would be a common-law lien, which is "a right in one man to retain that which is in his possession belonging to another, till demands of him, the person in possession, are satisfied. . . . It is founded upon the immemorial recognition of the common law of a right to it in particular cases, or it may result from the established usage of a particular trade:" 19 Am. & Ency. of Law, (2d ed.), p. 7. "The lien allowed to the carrier by the law extends only to his charges for the transportation of the goods, and does not include expenses for warehousing them; nor damages for the breach of collateral contracts or covenants by the shipper, even when incorporated in the bill of lading; nor extend to the payment of port charges; nor to damages for detention beyond the time fixed by the contract for receiving, or loading or unloading the goods; nor to compensation for delay in the nature of demurrage:" Hutchinson on Carriers, sec. 478. "There is no lien for demurrage unless it is stipulated for in the contract:" 9 Am. & Eng. Ency. of Law, (2d ed.), p. 270. All liens are created by law or by contract of the parties; and when the law gives none, neither party can create one without the consent or agreement of the other. Hence, the consignee of goods shipped by railroad is not bound by rules and regulations of the company providing for a lien for demurrage, though published, without his or the consignor's assent thereto when the contract for shipping the goods was made. Even a knowledge of such rules, without assent thereto, will not affect the shipper or consignee. A common carrier has no lien upon goods for damages arising from the neglect of the consignee to take them away within a reasonable time after notice to him of their arrival: Chicago

& Northwestern Ry. Co. v. Jenkins, 103 Ill. 588. The inconvenience or expense occasioned by the detention of cars constitutes a claim in the nature of a demurrage, but the carrier must seek his redress in the ordinary manner for the breach of an implied contract to pay for the use and occupation of the cars. He cannot enforce it by a detention of the goods: Crommelin v. New York & Harlem Railroad Co., 4 Keyes (N. Y.), 90. "The right of a common carrier to a lien extends to charges connected with the expenses of transportation strictly:" 2 Redfield on Railways (6th ed.), p. 193. Attention need not be called to more authorities upon this subject. The judgment of the Superior Court, affirming the judgment of the court below, must be reversed.

Judgment reversed and a venire facias de novo awarded.