# Wright *v.* Baltimore & Ohio Railroad, Appellant.

*Railroads—Carriers—Cars—Discrimination—Coal.*

All shippers similarly situated must be treated alike by a railroad company at the same place in the distribution of cars. An unusual volume of business may make it impracticable for the railroad company to provide an adequate supply, but the duty remains to distribute whatever cars may be available among those of the same class in due proportion. Any inequality of charge or facilities for transportation must be justified by a difference of circumstances and situation.

A transportation company may not discriminate in favor of particular persons or companies because they have been for a longer time engaged in business than other companies.

A person who is not the owner or lessee of a coal mine, but has only a contract to purchase and sell coal, has a standing to demand cars from a railroad company on which his coal may be loaded from wagons, where it appears that owners or lessees of coal mines have been furnished cars for use in the same way.

A Pennsylvania court has jurisdiction over a railroad company sued for discrimination in supplying coal cars, where it appears that the plaintiff's relation to the coal terminated at a point within the limits of the state of Pennsylvania; and it is immaterial that the intentions of plaintiff may have been that the coal should be shipped from that point to a point without the state.

Argued May 9, 1906. Appeal, No. 61, April T., 1906, by defendant, from judgment of C. P. Somerset Co., Feb. T., 1903, No. 295, on verdict for plaintiff in case of John M. Wright *v.* Baltimore & Ohio Railroad. Before Rice, P. J., Porter, Henderson, Morrison, Orlady, Head and Beaver, JJ. Affirmed.

Assumpsit to recover damages for refusal to furnish coal cars. Before Koozer, P. J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[If, however, you go further and determine that under the evidence of Smyth and Wright it was a shipment only within Pennsylvania, that it was, as Wright said, to be shipped to Salisbury Junction alone, that would leave it within our juris-

diction, and you will go further in the case. There is no joint jurisdiction between the United States and this state.

We then submit to you the question whether under the testimony this was a shipment to Salisbury Junction as testified to by Smyth and Wright, or whether the evidence satisfies you that it was intended as a shipment and sale outside of the confines of Pennsylvania.] [1]

[We say to you that we cannot agree that the fact that Mr. Wright then first offered to ship coal and had never shipped before and that Mr. Balliott and others had shipped before, is one of the circumstances that would warrant the company to give cars to one and refuse them to the other.] [2]

[I will permit you to determine the discrimination, if there was any, in favor of those other loaders, by wagons, who got their cars upon application from the railroad company in the manner plaintiff says he tried to get them and failed. If the defendant furnished cars to the others and refused them to plaintiff, that would be an unjust discrimination in the view of the court. The railroad company had no right to make such a discrimination, and if made, the company would be liable under this act of assembly which I have read in your hearing.] [3]

[Whilst the railroad company may make its allotment to give to each operation so many cars, that allotment is not binding upon the court and jury; it is a question whether the allotment was itself upon a just basis. If we have jurisdiction of this case, under what we said to you some time ago, the plaintiff was entitled to the percentage of cars received by others of the same class.] [4]

Plaintiff presented these points.

2. And inasmuch as the damages claimed in this suit are not for discrimination in rates, but for an undue and unreasonable discrimination against plaintiff in not furnishing any cars, while said defendant company did furnish cars to other persons on said branch railroad, who during the same period engaged in buying, selling and loading coal, then plaintiff, under the act of June 4, 1883, is entitled to recover in this action treble the amount of injury suffered. *Answer:* The first sentence of this point we think not relevant to this case, and refuse to affirm it as applicable to this case. The second sen-

tence of the point we affirm, if the other persons referred to were loading coal under like circumstances with the plaintiff, as we have heretofore explained what constitutes like or unlike circumstances. [5]

4. The mere fact that plaintiff had not been a coal operator or shipper prior to January, 1903, is not sufficient cause for defendant to discriminate against him in favor of those who were shippers on this branch railroad prior to that date. *Answer :* Affirmed. [6]

8. The measure of single damages in this case is the difference of the selling price of the coal for the shipment of which he should have been furnished facilities and the cost of said coal to Wright, loaded at East Salisbury and Boynton. Any verdict in this case must be for three times the amount of single damages. *Answer :* That act of assembly, 1883, provided that upon its violation the offending company or common carrier shall be liable to the party injured in damages treble the amount of injury suffered. The plaintiff, under the evidence in this case, was not entitled to as many cars as demanded, but, if any, to a pro rata share with other persons or companies who were operating under like circumstances, and the measure of the amount of injury, if any suffered, therefore, would be the difference between the price at which he had contracted to sell the coal, and for the shipment of which he should have been furnished such amount of facilities as we have just stated, and what would have been the cost to him of furnishing that coal loaded on the cars at East Salisbury and Boynton. And if such injury is found, the verdict must be three times the amount of the injury suffered. [7]

Defendant presented these points :

1. That this action is founded upon the act of June 4, 1883, which provides as follows: " Nor shall any such railroad company or common carrier make any undue or unreasonable discrimination between individuals, or between individuals and transportation companies, or the furnishing of facilities of transportation."

These words mean a discrimination that is " not right, not legal, unlawful, unjust." (Worcester's Dictionary.) " Improper, illegal." (Standard Dictionary.) And the plaintiff must, therefore, prove such a discrimination as between him

and persons who were shippers on the road, of the different companies. *Answer :* Affirmed as to all persons shipping or offering to ship like goods with the company. [8]

4. That the company had a right to fix a point on the Salisbury railroad from which shipments should be made by team track loaders, and it was not in the power of the plaintiff to insist on coal being loaded at any other point on the said road of the defendant company. *Answer :* The company had a right to fix a point or points on their road from which such shipments can be made, but such points must be reasonably convenient to shippers. As the order fixing such points seems to have been made on January 23, 1903, it cannot affect this case of an earlier date, or at an earlier date than you shall find the order was made. They can fix points at which shippers may load, but they must be located reasonably and consistently with the interests of shippers. But it seems to me that it is not very important in the case, if you find that these points were fixed as late as January 23. [9]

5. That as Wright, the plaintiff, was not the owner or lessee of a mine, but according to his own testimony had only a contract to purchase and sell coal, he does not come within the class entitled to demand cars, and therefore there could be no undue, illegal or improper discrimination against him, and the verdict must be for the defendant. *Answer :* We refuse to so instruct you. [10]

6. That even if the plaintiff was entitled to get cars, before he can recover in this case he must have proven to the satisfaction of the jury that the defendant company unduly and illegally discriminated between him and persons in the same class, and as he has failed to show that he was discriminated against in favor of persons in the same class there can be no recovery. *Answer :* We refuse that. [11]

7. That if the jury find that owing to the increased demand for bituminous coal the defendant company had largely increased traffic imposed upon it at the time specified in the plaintiff's statement, to wit: from January 6, 1903, to February 20, 1903, and owing to the scarcity of cars the company was unable to furnish him with cars, then there can be no recovery by the plaintiff. *Answer :* As the evidence shows the number of cars supplied shippers in that region within the

period named, we refuse the point as stated.  The mere fact that there was a great demand and cars were scarce had only the effect of reducing the number of cars that plaintiff or anybody else in the neighborhood had a right to expect; the proof also entitled all to a percentage of the entire amount that went into the region. [12].

Verdict and judgment for plaintiff.  Defendant appealed.

*Errors assigned* were (1–12) above instructions, quoting them

*W. H. Koontz,* with him *J. G. Ogle,* for appellant, cited: Hoover v. Penna. R. R. Co., 156 Pa. 220 ; Cincinnati, etc., Ry. Co. v. Interstate Commerce Commission, 162 U. S. 184 (16 Sup. Ct. Repr. 700) ; Post v. R. R. Co., 108 Pa. 587 ; Harp v. Ry. Co., 118 Fed. Repr. 169.

*Ernest O. Koozer,* with him *Valentine Hay* and *Albert L. G. Hay,* for appellee, cited : Hannibal, etc., R. R. Co. v. Swift, 79 U. S. 262 ; Ohio & Mississippi Ry. Co. v. McCarthy, 96 U. S. 258 ; Harp v. Choctaw, etc., Ry. Co., 118 Fed. Repr. 169 ; Ayres v. Chicago, etc., Ry. Co., 71 Wis. 372 (37 N. W. Repr. 432).

OPINION BY HENDERSON, J., October 5, 1906 :

The plaintiff's action was brought under the Act of June 4, 1883, P. L. 72, to recover damages for discrimination against him in transportation facilities.  The plaintiff alleged discrimination in favor of numerous companies, firms and individuals engaged in shipping coal, some of whom loaded on the defendant's cars through tipples, while others were known as "team track loaders" who delivered from wagons at platforms, to which latter class the plaintiff belonged.  The plaintiff's claim covered discriminations in favor of both classes of shippers, but at the trial his right of recovery was limited to discriminations in favor of other loaders from wagons, the court being of the opinion that shippers who loaded from tipples were not "upon like conditions, under similar circumstances" with those who loaded from wagons.  There was evidence showing that the defendant furnished cars to several team track loaders at the places where and during the time when the plaintiff sought to ship coal; that the manner of shipment by those who so

received cars was the same as that adopted by the plaintiff; that frequent requests were made to the company for cars by the plaintiff; that cars were promised but never furnished; that a large number of cars were provided by the defendant for other shippers and that the defendant neglected and finally refused to furnish any to the plaintiff. This evidence raised a question of fact for the determination of the jury.

The general obligation of a railroad company to furnish the necessary cars to carry goods offered for transportation grows out of the public nature of its business and does not depend upon contract. This duty does not involve the necessity of providing transportation at all times upon demand where an unusual increase of business makes it unreasonable that a transportation company should be provided with exceptional capacity to meet such demand; but whatever may be the ability of the company in this respect the constitution and statute forbid that there be any undue or unreasonable discrimination between individuals or between individuals and companies in the furnishing of facilities for transportation. All shippers similarly situated are to be treated alike at the same place in obtaining cars. An unusual volume of business may make it impracticable for the railroad company to provide an adequate supply, but the duty remains to distribute whatever cars may be available among those of the same class in due proportion: Borda v. R. R. Co., 141 Pa. 484; Hannibal, etc., R. R. Co. v. Swift, 79 U. S. 262; Ogdensburg & Lake Champlain R. R. Co. v. Pratt, 89 U. S. 123; Baxendale v. Ry. Co., 94 E. C. L. 336; Messenger v. R. R. Co., 37 N. J. L. 531; Great Western Ry. Co. v. Hawkins, 18 Mich. 427; U. S. ex rel. Kingwood Coal Co. v. W. Va. Northern R. R. Co., 125 Fed. Repr. 252; Hoover v. Penna. R. R. Co., 156 Pa. 220. Any inequality of charge or facilities for transportation must be justified by a difference of circumstances and situation. That the plaintiff was situated similarly to several of the dealers to whom the defendant furnished cars is clearly shown by the evidence. The appellant objects that the plaintiff was not the owner of a coal mine and that he was not "rated," but others who received cars were subject to the same objection; nor was it material that the shippers did not own mines. They furnished coal at loading places at which such freight was regularly received by the defendant. It was not a

matter material to the public or the defendant, whether the plaintiff obtained his coal from a mine owned by himself or from mines owned by other persons.   According to the evidence, he was the owner of coal which he delivered at the platform at which the defendant received such merchandise, and he was entitled to like consideration with others engaged in the same business in the same manner.   A large part of the commerce of the country is carried on by dealers who are not the producers of the goods in which they deal.   New ventures in trade are entered upon daily by men and companies not theretofore so engaged.   A rule which would permit a transportation company to discriminate in favor of particular persons or companies because they had been for a longer time engaged in business would have a most pernicious effect on commerce and is inconsistent with the element of fairness which the law seeks to establish.   Moreover, the evidence shows that the plaintiff had an interest in one of the mines from which he obtained coal and that cars were furnished for other shippers who were not owners of mines.   The plaintiff notified the defendant that he was prepared to ship 200 tons of coal a day. Whether he was "rated" by the company was a matter for it and not for the plaintiff.   He took all the steps reasonably necessary to bring to the notice of the company the requirement as to transportation necessary for his business.   It is doubtless true, as claimed by the defendant, that there was a demand for cars beyond the capacity of the company, but it is admitted that many cars were furnished to shippers in the district where the plaintiff was and a large number to persons and companies shipping at the sidings where the plaintiff delivered his coal. If the refusal had been to all of the dealers loading from wagons, because of delay in loading the cars and because of the superior facilities of the tipple loaders, one of the questions raised by the appellant would have been involved in the case; but no such discrimination was made by the defendant, nor was any objection made against the method of loading or that the persons delivering the coal were not the owners of the mines from which the coal was brought.   The case of Harp v. Choctaw, etc., Ry. Co., 118 Fed. Repr. 169, is not applicable to the case under consideration.   The objection there was to provide cars to be loaded from wagons on the commercial tracks in the company's

yards at a time when the business of the road was unusually heavy, necessitating the constant use of the tracks, and when its supply of cars was insufficient to handle its traffic. The supplying of cars to coal companies on their private tracks to be loaded by tipple was held not to be an unreasonable discrimination, because of the difference in the situation of the shippers. The refusal to provide cars was distinctly stated and affected the class of shippers loading from wagons. In the present case no such objection was made nor was there a refusal to furnish cars to individuals or companies loading from wagons. On the contrary, several of such shippers were accommodated with cars. If the company had justifiable reasons for refusing to carry the plaintiff's property it should have insisted upon such grounds in order to avoid responsibility. After having promised to provide cars, as the plaintiff claims, it is too late when litigation has arisen for the defendant to change his position and justify his conduct on other grounds : Hannibal, etc., R. R. Co. v. Swift, 79 U. S. 262 ; Ohio & Miss. R. R. Co. v. McCarthy, 96 U. S. 258.

We have no doubt that the business of the plaintiff brought him within the terms of the statute. Discrimination between individuals is forbidden as well as between individuals and transportation companies, and the plaintiff's evidence very clearly shows discrimination against him. It is said that the plaintiff was not a "shipper," but the statute was not enacted in behalf of regular shippers or those who had been shippers before that. A man has a right to begin to ship goods and it is the policy of the law to encourage the legitimate development of commerce.

No question of interstate commerce arises if the testimony of the plaintiff is believed. According to his evidence Salisbury Junction was the point of delivery. The court instructed the jury that if the contract between the plaintiff and Smyth was for the shipment of coal beyond the limits of Pennsylvania that would end the case ; but that if the shipment was to a point only within Pennsylvania, the case was within the jurisdiction of the court. The verdict shows that the jury found the fact to be as alleged by the plaintiff. It may be that it was the intention of Smyth that the coal should be shipped from Salisbury Junction to a point without the state, but the

plaintiff's relation to the coal terminated at Salisbury Junction. Taking the plaintiff's evidence as true, the service was to be wholly within the state of Pennsylvania and would be presumably subject to the laws of this state. The contrary was not established by the evidence.

The case was submitted to the jury with a fair and impartial charge and we do not find anything in the assignments of error requiring a reversal.

The judgment is affirmed.