## Pennsylvania Railroad Company *v.* Samuel, Appellant.

*Railroads—Carriers—Demurrage—Lien.*

Where a seller ships the first of several deliveries of iron, and subsequently the railroad company notifies him that the purchaser will not accept the iron, and thereafter he ships other deliveries, consigning them to his own order, although the purchaser continues the embargo, and the cars remain unloaded on the tracks of the railroad, the seller will be liable to the railroad company for demurrage; and if after the embargo is raised, the railroad company refuses to release the cars until the demurrage is paid, the seller will be liable for demurrage from the time the embargo was raised until the time when he finally paid the original demurrage, if the bill of lading provides for a lien for demurrage.

Argued Oct. 12, 1910. Appeal, No. 49, Oct. T., 1910, by defendants, from judgment of C. P. No. 5, Phila. Co., Dec. T., 1905, No. 3,198, for defendant on case tried by the court without a jury in suit of Pennsylvania Railroad Company v. Frank Samuel and Silas M. Tomlinson, trading as Frank Samuel. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Assumpsit for demurrage.
The case was tried by the court without a jury.

RALSTON, J., filed the following opinion:
This case was tried without a jury. The facts were

agreed upon, and the agreement of counsel is hereto annexed as the findings of fact by the trial judge.

The plaintiff is a railroad corporation. The defendants had contracted prior to June 19, 1905, to sell cinder to the Emporium Iron Company at Emporium, Pa., in pursuance of which cinder was shipped over the plaintiff's railroad and delivered to the Emporium Iron Company at Emporium, Pa.

On June 19, 1905, the Emporium Iron Company notified the plaintiff not to receive any shipments of cinder consigned to it at Emporium, as it would not accept them. The plaintiff notified its agents not to receive such shipments, and also notified the defendants that they would not receive such shipments, but did not tell them until June 29, 1905, that they took this action by direction of the Emporium Iron Company.

On June 29, 1905, the general counsel of the plaintiff wrote to the defendants that the Emporium Iron Company had directed the railroad company not to receive shipments of cinder consigned to it, and that the plaintiff company therefore would not receive such shipments. On June 29, 1905, the defendants replied that they would forward the cinder to their own order at Emporium and would be responsible for the freight. On or about July 1, 1905, the plaintiff's agent notified the defendants that it must be understood before shipments were accepted that they were not to be reconsigned to the Emporium Iron Company so long as the embargo was in effect, and if they went forward the defendants must be responsible for demurrage. On July 1, 1905, the defendants replied that they would not pay demurrage and would expect the cars to be delivered at Emporium. On July 7, 1905, the plaintiff wrote to defendants that there was no embargo on shipments of cinder to them at Emporium, but that they could not accept any reconsignment to the Emporium Iron Company and that they would hold the defendants responsible for demurrage.

On June 30, 1905, plaintiff's agent at Emporium re-

ceived from the defendants orders to deliver to the Emporium Iron Company, when they should arrive, certain cars consigned to defendants. The agent wrote to defendants that it would be impossible to deliver the cars, as the Emporium Iron Company had given them written instructions to place an embargo on all shipments to them, and asking defendants to make some disposal of the cars.

On July 5, 1905, the plaintiff's agent notified the defendants that he had five cars which he could not deliver. On July 12, 1905, he again notified them that he had twelve cars drawing demurrage. On July 22, 1905, he wrote that he had some twenty-five car loads consigned to the defendants and asking what disposition they wanted made of them. On July 24, 1905, defendants replied that they had instructed the plaintiff to deliver the cars to the Emporium Iron Company and all demurrage should be charged to them, and asked the agent to tender the cinder to that company daily. On July 25, 1905, the plaintiff wrote defendants that they could not accept reconsignment to the Emporium Iron Company. On the same date the defendants answered that any loss to them would be charged to the plaintiff. No orders for disposal of the cars was given, except repeated directions to deliver to the Emporium Iron Company. The plaintiff's agent at Emporium notified the Emporium Iron Company of the arrival of each car and asked if they would accept it, but acceptance was in every instance refused. The defendants were not notified of such refusal except as set forth in the above correspondence.

The embargo was raised on July 28, 1905, but the cars were not delivered for more than two weeks, being held by the plaintiff until the demurrage was paid. The cars were eventually delivered without prejudice to the plaintiff's right to recover the demurrage. No detailed statement of the amount of demurrage claimed was furnished the defendants until August 1, 1905.

The bill of lading provided that the carrier might make a reasonable charge per day for the detention of cars after

they had been held for forty-eight hours and hold the property subject to a lien therefor.

Demurrage is claimed upon cars at Emporium as follows: Before the embargo was raised on July 28, 1905, $363; after embargo was raised, $297; a total of $660.

Although the dates of shipment are not stated in the agreement of facts, it appears from the letters that all the cars upon which demurrage is claimed were consigned to the defendants at Emporium after June 29, 1905, and it is so understood by the court.

The defendants argue that the railroad company discriminated against them by refusing to accept their shipments when they were accepting shipments from others. This is an erroneous view of the case. What the plaintiff did was to notify the defendants that it could not deliver cars to the Emporium Iron Company because that company would not accept them. The defendants in the face of that notice insisted upon making the shipments, consigning the cars to themselves. As a matter of fact, all these cars were tendered to the Emporium Iron Company and refused. The defendants were again and again notified that the cars could not be delivered and that if they chose to make the shipments they would be held responsible for demurrage; nevertheless they persisted in their shipments and the railroad was obliged to hold the cars as it was impossible to deliver them. What motive or object the defendants had in making the shipments after the Emporium Iron Company had refused to accept them it is impossible to perceive. If they had no place to store the cinder then, of course, they cannot object to paying the plaintiff for their storage. If, on the other hand, they were acting upon a mistaken view of the law that in order to hold the Emporium Iron Company for a breach of contract it was necessary to actually tender the cinder to it at Emporium, they cannot hold the plaintiff responsible for their error. As soon as the defendants were notified that the Emporium Iron Company would not accept any more cinder the contract was broken by

anticipation and the defendants might at once have brought suit against that company for its breach, without any further tender or offer to perform.  In a suit by the defendants against the iron company the defendants would not have been permitted to recover from the company expenses incurred by shipments made after notice that they would not be accepted.  So in any view of the case it is impossible to understand the defendants' motive for insisting upon shipping the cars at all.  However, they did ship them to themselves and, therefore, took the risk of their being accepted.  As they were not accepted, but refused by the iron company, and as the defendants refused to give any further shipping directions, they are answerable to the plaintiff for the demurrage.  After the embargo was raised by the Emporium Iron Company the Railroad Company was not bound to deliver the cars until the demurrage was paid, as sec. 5 of the bill of lading expressly provides that the carrier may make a reasonable charge per day for the detention of cars and use of tracks and hold the property subject to a lien therefor.

In the opinion of the trial judge, the plaintiff is entitled to recover the full amount of its claim, namely, $660, with interest, and judgment will be entered for this amount when computed by counsel.

*Error assigned* was in entering judgment for plaintiff.

*Lewis Lawrence Smith*, for appellants.—The embargo was illegal: Hoover v. R. R. Co., 156 Pa. 220; Baily v. Fayette Gas Fuel Co., 193 Pa. 175; Rogers v. P. & R. Ry. Co., 12 Interstate Commerce Rep. 308; Wright v. B. & O. R. R. Co., 32 Pa. Superior Ct. 5.

The embargo was the cause of demurrage.  The plaintiff did not fulfill its ordinary duties as a carrier: Houston E. & W. Texas Ry. Co. v. Campbell, 91 Texas, 551 (45 S. W. Repr. 2); Tanner v. Oil Creek R. R. Co., 53 Pa. 411; Arbuckle v. Thompson, 37 Pa. 170; Wright v. Railway Co., 8 Phila. 19.

The liability of the railroad company after the arrival

of the cars at destination and after a reasonable time had elapsed for the consignee to unload probably became that of a warehouseman: Lake Shore & M. S. R. R. Co. v. Hodapp, 83 Pa. 22; but it never was intended that a railroad company should keep the goods stored in its cars and charge car service: Somes v. Shipping Co., 8 H. of L. Cases, 338.

A lien exists only under special contracts which will be strictly construed: Nicolette Lumber Co. v. People's Coal Co., 213 Pa. 379.

*Sharswood Brinton,* with him *Hampton Barnes,* for appellee.—A common carrier is not obliged to carry goods consigned to a particular consignee in the face of an order given by that consignee to the carrier not to transport goods of that particular kind to it, and that it will not accept them if so carried, where such notice to the carrier, called an embargo, is given to the consignor before the goods are loaded: Lake Shore & M. S. R. R. Co. v. Hodapp, 83 Pa. 22; National Line Steamship Co. v. Smart, 107 Pa. 492; Tanner v. Oil Creek R. R. Co., 53 Pa. 411; Rickey v. Tutelman, 19 Pa. Superior Ct. 403; Louis Werner Saw Mill Co. v. Ferrer, 201 Pa. 405; Miller v. Seaman, 176 Pa. 291; Lawrence v. Minturn, 58 U. S. 100; Bedford Bowling Green Stone Co. v. Oman, 134 Fed. Repr. 441; O'Rourke v. R. R. Co., 44 Iowa, 526.

The lien for the demurrage is given in this case by the bill of lading: Nicolette Lumber Co. v. Coal Co., 213 Pa. 379; Penna. R. R. Co. v. Steel Co., 201 Pa. 624.

OPINION BY ORLADY, J., March 3, 1911:

The parties to this suit dispensed with a trial by jury, and submitted the decision thereof to the court under the provisions of the Act of April 22, 1874, P. L. 109. Counsel joined in an agreement as to the controlling facts, and each presented requests for findings of fact and conclusions of law thereon. The trial judge, in his opinion, has properly disposed of every question raised, and the judgment is affirmed for the reasons given by him.