# Tanner *versus* The Oil Creek Railroad Company.

53    411
41SC ²144

1. Goods were shipped on a railroad for a place thirty-six miles distant, the shipper was at their destination in three days to receive them, and occasionally for twelve days, and they had not arrived; the freight agent then informed him that he would give him notice of their arrival; they arrived six days afterwards. *Held*, that the company was bound to give the shipper notice of their arrival.

2. The freight agents could bind the company by their representations and promises made in the course of the business intrusted to their particular care.

3. The custom or rules of the freight office do not dispense with the duty to give notice.

4. The facts in the case did not entitle the shipper to treat them as lost, and bring suit for their value.

ERROR to the Court of Common Pleas of *Erie county*.

This was an action of assumpsit, in which the writ was issued December 2d 1864, by A. F. Tanner against The Oil Creek Railroad Company.

The plaintiff declared for the *loss* of six bales, containing 1230 pounds of hops, delivered by him to the defendants to be carried from Corry to Shaffer.

The proof showed the delivery of the goods to the defendant at their depot at Corry, to be delivered at Shaffer, another station on their road, 36 miles distant. The evidence of the plaintiff was

that the railroad agent agreed to ship them the next day or the next day but one; that they had not arrived at Shaffer the third day afterwards; that the agent of the plaintiff went on foot from Corry to Shaffer, and examined every switch and siding, but could find no car of the number 6979, in which the railroad agent had informed the plaintiff's agent the goods were shipped; that he again demanded the goods from the freight agent at Shaffer, who said they had not arrived, but agreed to give him notice of their arrival. The plaintiff had not received the goods at the time of the cause, November 2d 1865.

On the part of the defendants the evidence was that the hops were first put into car 6979, which was broken, and they were changed to car 1566; that the business on the road increased rapidly in 1864, and that locomotives in sufficient numbers could not be obtained, as they had been taken by the government from the machine shops; that the hops arrived at Shaffer on the 28th of November 1864, and were put into the warehouse, but no notice of their arrival was given to the plaintiff; that it was against the custom and rules of the office to give notice of the arrival of goods.

A verdict was rendered for the plaintiff for $450, and a new trial ordered; on the second trial, February 1st 1866, the plaintiff had a verdict for $242.40, and he took out this writ of error.

The plaintiff on the trial submitted a number of points, some of which related to the duty of the company to give notice of the arrival of the goods; on this subject the court (Johnson, P. J.) charged:—

" That the plaintiff did not know the hops were there, was the result of his own negligence, quite as much as that of the company. It was his duty to inquire, and ascertain whether the goods had arrived. If it was not convenient to go there, the mail or telegraph would have brought him the information for a trifle. If he relied on the promise of any employee of the company to give him notice of their arrival, he did so at his peril. The duty was not one the company was bound or accustomed to perform, nor one which they imposed on their employees, or which they were authorized to bind the defendant to perform. If any such arrangement was made, it may have imposed a personal duty on the party making it. There is neither evidence nor presumption that he had authority to bind the company by any such contract. The freight agent at Shaffer testifies, that no such arrangement was made by him or any one within his knowledge; that he had not the plaintiff's address, who was himself the consignee, and made diligent inquiry but failed to ascertain where he lived."

The plaintiff's 9th point, which was answered in the negative, was:—

[Tanner *v.* Oil Creek Railroad Co.]

" If the hops were misplaced or could not be found, and the plaintiff was so informed by the defendants, the plaintiff would have a right to bring his suit for their value, and the finding of the hops, either before or after the suit brought, without notice to the plaintiff of their being found and arriving at their destination, would be no defence to this action for their value, and the plaintiff would be entitled to recover."

These instructions were assigned for error ; the answer to the 9th point being the 10th assignment.

*G. W. De Camp*, for plaintiff in error, cited 1 Smith's Lead. Cases 319 ; Angell on Carriers, § 284.

*J. W. Wetmore*, for defendant in error, cited McCarty *v.* New York and Erie Railroad Co., 6 Casey 247 ; Angell on Carriers, p. 319 ; Wilbert *v.* New York and Erie Railroad Co., 2 Kernan 245.

The opinion of the court was delivered, January 7th 1867, by

READ, J.—The evidence in this case is not contained in a bill of exceptions, nor is it certified from the judge's notes, but each party prints in his paper-book so much of it as he thinks proper. Such a practice is entirely irregular, and gives unnecessary trouble to the court in ascertaining what is the testimony, and whether it is the whole or only a part—and may probably prove injurious to either the plaintiff or defendant.

This non-compliance with our rules should be carefully avoided by counsel, whose clients as well as the court have a right to complain of it.

So far as the evidence is printed by the plaintiff, it appears that the father and agent of the plaintiff, on the 10th November 1864, delivered six bales of hops to the defendants at Corry, to be shipped to Shaffer. The freight agent at Corry received the hops, and carred them, and gave him a receipt for them. He agreed to ship them the next day or the next but one. Agent went to Shaffer on the next day, which was Friday, and the hops had not arrived. Stayed at Shaffer until Sunday, and the hops not having arrived, went to Titusville. On the Wednesday following (16th November), went to Corry, and the agent there told him that the car must be off on some switch. Had the agent put the number of the car in which the hops had been shipped on his bill. The number of the car was 6979. He then went clear through on foot along the railroad from Corry to Shaffer, and examined every switch and siding on the road, but could find no car of the number. Witness then said : " I again demanded the hops of the freight agent at Shaffer, but he said they had not arrived. He then took my post-office address, and agreed to give me notice if the hops should arrive. Went to Black, the super-

[Tanner *v.* Oil Creek Railroad Co.]

intendent of the road, and demanded the hops." He said, they would find the hops, and give me notice. The weight of the hops was about 1225 or 1250 pounds—had contracted to sell them at 55 cents per pound."

The telegrams received by the witness, from the different stations, were produced, as follows:—

From Corry to Shaffer: "W. T. R. B. R., Car 6979, Six Bales Hops for Tanner has left here. GILMAN."

From Titusville to Shaffer: "Car (6979) is not here. MAXON." "Nov. 21, '64."

"To agent Shaffer. Is car 6979 at Shaffer. TANNER." Answer: "W. Tanner, No Sir. R. B. KNAPP." "Nov. 22, 1864."

Another witness was present when the hops were delivered at Corry, who said: "They agreed to ship them in two or three days. Went to the freight agent four or five days after, and he told him they had shipped the hops as they agreed to do. He afterwards told him he thought they were shipped to New York."

This was the plaintiff's case, except the bill of lading or receipt dated 10th November 1864, and signed by "A. N. Gilman, agent," in defendants' paper-book.

On the 2d December 1864 suit was commenced, and on the 17th of the same month copies of the writs were served on Black, the superintendent, and on Struthers, the president of the defendants, and the *narr.* was filed on the 29th December 1864.

The defendants gave in evidence the freight bill from Corry to Shaffer, dated November (12 erased),

18th 1864

| No. Car | Consignors | Consignees | Article | Weight | Charge |
|---|---|---|---|---|---|
| (6979 erased) 1556 | Local | Wm. Tanner Shaffer | 6 Bales Hops | 1200 | $2.16 |

and proved by their car reporter, that car No. 6979 was put into the shop siding for repair, on the 15th or 16th November 1864. From his memorandum, he should say, the car had a broken draw-head.

It was proved that the hops were first put into car No. 6979— changed to 1566, because the other was broken—lost freight is found by a tracing sheet. Those two cars were Atlantic and Great Western cars. The company used cars of that road, and also New York and Erie cars; but witness said they had not motive power, and could not get it. It was proved by a former assistant superintendent, that the business increased fast in June 1864, and he applied to the superintendent for locomotives; and the machine-shop said they could make them in six months. Government had taken them from the machine-shops. It took two weeks'

[Tanner *v.* Oil Creek Railroad Co.]

time to get freight through to Shaffer. He said—It is not a rule to give notice of the arrival of goods.

Mr. Knapp, the company's agent at Shaffer, proved the arrival of the hops in car No. 1566 at Shaffer, on 28th November, and that they were put into the warehouse. The witness said, " no person called for them after they were received: a week before a man called. I did not tell him that I would write him when they arrived. It is not the custom or rule of the office: it is against the rules. We have not time. The hops were in our way, and we inquired of brewers in Titusville and Plummer if they knew W. Tanner. We made efforts to find the owner."

" There was a general increase of business on the road. The delay in this case was not unusual. Freight was from two to four weeks from Corry to Shaffer."

It is clear that if notice of the arrival of the hops at Shaffer had been given to the plaintiff or his agent, this suit would not have been brought; and there is no evidence that after this action was commenced, and the writ was served on the president and on S. A. Black the superintendent, from whom the goods had been personally demanded, that any notice or information was given to the plaintiff of their arrival at Shaffer. On the contrary, it is stated in the history of the case : " The first time the plaintiff learned the hops had been found, was on the trial of this case, some twelve months afterwards." On the 17th December, one month after their arrival, the company knew, certainly, where the owner was to be found ; and the freight agent at Shaffer had previously taken the post-office address of the plaintiff's agent and consignee.

The common-law rule is thus stated by Professor Parsons, in his excellent Treatise on Contracts, 5th edition, 1864, vol. 2, p. 183, " As the liability of the carrier begins with the delivery of the goods to him, so it continues until the delivery of the goods by him. For he is bound not only to carry them to their destined place, but to deliver them there to the bailor, or as the bailor may direct : and this he must do within what shall be a reasonable time, judging from all the circumstances of the case." " If the consignee refuse to receive the goods, or cannot receive them, or is dead or absent, this will excuse delay in delivery, but not absolve the carrier from all duty or responsibility—for he is still bound to make all reasonable efforts to place them in the hands of the consignee, and when these are ineffectual, to take care of the goods of the owner by holding them himself, or lodging them with suitable persons for him ; and such persons then become bailees of the owners of the goods." " And where there is a custom which would wholly excuse the carrier from delivering the goods, still if he makes an express promise to deliver, he is bound by this promise, and the custom becomes inoperative."

[Tanner *v.* Oil Creek Railroad Co.]

Treating of delivery by railroads, p. 189, he says: "For all these reasons and some others, it seems to be usual with railroads not to send the goods out of the depots. There is, perhaps, no objection to the usage strengthening itself into law. But we think in that case, that the railroad carrier should give notice forthwith, on the arrival of the goods, to the consignee, if his residence is known, or can be found by any reasonable exertions. We think the law should make this requirement, and this so positively, that no usage against it should be permitted to control the law—at least, not unless it were quite universal and well known to all, and there is some disposition to hold the law thus."

I know that in 1857, Pierce, in his Treatise on American Railroad Law, p. 449, considers this an unsettled question, and that Judge Redfield, in the same year, in his Treatise on the Law of Railways, p. 251, says: "As we understand the cases to have settled the question, that the carrier by railway is neither bound to deliver to the consignee personally, or to give notice of the arrival of the goods." As to the last clause of this sentence, Professor Parsons is certainly a better and later authority, and the present case is certainly a strong argument in favor of his position, for if notice had been given there would have been no suit, and of course no judgment against the defendants.

And such seems to be the opinion of the Commissioners of the Code of New York, in the Civil Code reported by them, page 332, § 1105: "If, for any reason, a carrier does not deliver freight to the consignee or his agent personally, he must give notice to the consignee of its arrival, and keep the same in safety, upon his responsibility as a carrier, until the consignee has had a reasonable time to remove it."

These are the authorities, but the present case does not require a stringent application of them to it, and we shall decide it upon its own peculiar circumstances, which are sufficient to show the court committed a cardinal error as to the duties imposed by law on the defendants and their agents.

This road from Corry to Shaffer was thirty-six miles long. The freight receipt is dated 10th November, and the freight bill shows the six bales of hops were shipped in car 6979 on the 12th, taken out and reshipped on the 18th in car 1566, and that it arrived on the 28th at Shaffer, a period of eighteen days after it was delivered to the defendants at Corry, where, if plaintiff's witness is believed, the freight agent agreed they should be shipped the next day or the next day but one. Through the neglect and delay of the company, every effort to discover where the hops were failed, until the 22d November, when the plaintiff's agent ceased any further inquiries—the freight agent taking his post-office address, and agreeing to give him notice if the hops should arrive. They arrived six days afterwards, but no notice

[Tanner *v.* Oil Creek Railroad Co.]

was given either before or after the commencement of the suit, nor does it appear that the plaintiff ever knew they had been found until the first trial, in November 1865.

Under these circumstances, there can be no doubt that the defendants were bound to give notice; and that the freight agents were competent to bind the company, by their representations and promises, made in the course of business intrusted to their particular care; and the court should have so charged the jury.

The state of the road and its rolling-stock may account for the delay; but the mere allegation that it is not the custom or rule of the office, that it is against the rules, and that they have not time, and denying that he the agent did not tell Tanner he would write, do not dispense with the duty to give notice; and the latter part of the freight agent's testimony disproves his own assertion, for he says: "The hops were in our way, and we inquired of brewers in Titusville and Plummer, if they knew William Tanner. We made efforts to find the owner."

But the plaintiff is in error in his argument on the 10th assignment of error, in which he argues that his client may treat the property as lost, and may recover its full value.

Angell on Carriers, § 284, is quoted in support of this proposition, and the authority referred to is Raphael *v.* Pickford, 6 Scott N. R. 478, which case is also reported in 5 M. & G. (44 E. C. L.) 551, where it was held the plaintiff was entitled to recover upon proof of non-delivery, within a reasonable time. The damages assessed were 40s.

Upon an order from Birmingham to London, for a quantity of quills and pens, which the plaintiff had contracted to sell to one Myers, the pens properly addressed to the plaintiff at Birmingham were delivered at the office of the defendants, who were common carriers, on the 8th of August 1842. The parcel not arriving in due course, the plaintiff and another person went on the 10th to the defendants' office in Birmingham, and were told it had not arrived. The plaintiff called a second time and received the same answer. Upon application to the defendants in London, the plaintiff was told the parcel should be sent. It was at length sent, but not until the 3d or 4th of September, which was too late for the performance of the plaintiff's contract with Myers. The delay was caused by the direction having been accidentally destroyed.

The judge declined to nonsuit, and left it to the jury to say whether the parcel had or had not been delivered according to its direction, within a reasonable time, reserving leave to move to enter a nonsuit. The goods were delivered before action brought.

Tindal, C. J., delivered the written opinion of the court, sustaining his decision at Nisi Prius. This case does not support the construction put upon the passage by the plaintiff's counsel.

3 P. F. Smith—27

[Tanner *v.* Oil Creek Railroad Co.]

In a late English case, Hales *v.* The London and North Western Railway Company, 4 B. & S. (116 E. C. L.) 66, it was held that a carrier of goods is bound to carry them according to the usual route professed by him to the public, and to deliver them in a reasonable time. The jury having found the delay unreasonable gave the plaintiff £20 for the loss of the hire of the goods, and £5 for personal expenses in inquiring for them. The court allowed the latter only, and reduced the verdict to £5.

As we are not informed what became of the hops, we cannot say whether it is the interest of the plaintiff to have a new trial or not. In this climate, it is said, hops rapidly lose their fine flavor, and are generally used the season they are raised. If kept over the summer, their quality depreciates to such an extent that they rarely command one-half the price they did at first.

Judgment reversed, and *venire de novo* awarded.