## Vanderslice *v.* Insurance Company.

*Fraud of third person—Innocent person—Negligence.*

Where one of two innocent persons must suffer loss by reason of fraud or deceit of another, the loss should fall upon him by whose act or omission the wrongdoer has been enabled to commit the fraud.

*Insurance—Fraudulent transfers—Agency—Burden of proof—Notice.*

Where an insurance broker is entrusted with insurance policies assigned in blank, for the purpose of having them transferred, he is thereby made the agent of the owner of the policies and given the power of perpetrating the fraud of filling in his own name and collecting the return premiums.

When the owner in a suit to recover the premiums from the company offered these policies with their assignments, in evidence, they constituted evidence of payment in full by the company to the proper party, and the burden was upon the plaintiff to rebut the prima facie defense thus presented by proving not only that the assignments were fraudulently procured, but that the company, before paying the money on the faith of the assignments, had notice of the fact.

Argued Dec. 15, 1899. Appeal, No. 200, Oct. T., 1899, by plaintiff, in a suit of C. C. Vanderslice against The Royal Insurance Company, from judgment of C. P. No. 3, Phila. Co., March T., 1897, No. 179, on verdict for defendant. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by W. D. PORTER, J. ORLADY, J. dissents.

Assumpsit. Before McCARTHY, J.

It appears from the record that plaintiff having exchanged certain properties with Alex. Simpson, Jr., the parties met for final settlement and the fire policies were duly assigned in blank by Mr. Simpson. It was suggested that in order to be effective the assignment should be noted on the books of the company and as a member of the plaintiff's family was ill, one

Clayton Pierson, who had acted as agent in bringing the exchanging parties together and who had been paid his commission by plaintiff and who was still present, offered to take the policies to the company, have the transfer noted and return them to the plaintiff. On June 8, 1896, Pierson presented the policies at the company's office and fraudulently representing himself as the owner had the assignment filled in in his own name, had the policies canceled and received the cancelation value, $240, which he appropriated to his own use. Pierson was never the owner of the properties and he never had any interest in the policies and was never authorized to have them canceled.

Suit having been brought to recover the value of the properties defendant demurred to the statement, averring that the statement admitted that Pierson was the agent of the plaintiff and that the statement was not sufficient in law to maintain the action. The court entered judgment on the demurrer for defendant, which action was reversed on appeal. See Vanderslice v. Ins. Co., 9 Pa. Superior Ct. 233.

On the second trial of the case, at the conclusion of plaintiff's testimony, the trial judge directed the jury to find a verdict for defendant, refusing plaintiff's points, the points submitted by plaintiff being as follows :

[1. By the terms of the policies the company owed a clear duty to pay the cancelation value only to the owner and had by these terms sixty days within which to satisfy itself as to ownership, and if instead of availing itself of these provisions, it paid at once and to the wrong person, it was guilty of negligence and the verdict should be for the plaintiff for the value of the policies.

2. The policies were not negotiable instruments and it was not negligence for the owner to hand them to a stranger or have the transfer noted upon the books, as the owner had a right to rely upon the provisions in the policies that none but the owner could cancel them, this provision written in the policies by the company being as much for the benefit of the owner as for the company.

3. The company by making the slightest inquiry within sixty days, which it had within which to pay, could have fully protected the plaintiff and itself and avoided the injury resulting

from immediate payment to the wrong person, and not having done so it was negligent and must bear the loss occasioned by its negligence and the verdict should be for the plaintiff.] [2]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1) in directing a verdict for defend-ant. (2) In refusing to affirm plaintiff's points.

*E. Huhn Hanson*, with him *J. M. Vanderslice*, for appellant.— It is respectfully submitted that as this court or the Supreme Court has not in any subsequent decision modified the ruling made in this case, it should have controlled the action of the trial judge. He, however, ignored or disregarded it, appar-ently holding that the case is ruled by that of Pennsylvania Railroad Company's Appeal, 86 Pa. 80. This latter case, how-ever, was among those relied upon and cited by appellee when the case was previously before this court, and it is to be pre-sumed it received proper consideration but was not followed because it is not applicable to the facts in this case. In that case the certificates of stock were negotiable, and the owner of them was not required to be at the same time the owner of something else. In this case the owner of the policies was re-quired by the provisions written into them by the company to be at the same time the owner in fee of the properties; "they were not," in the opinion of this court, "negotiable documents."

Not only should this case have been submitted to the jury, but the court should have charged as requested in plaintiff's points. These points are really extracts from the opinion as applied to the evidence.

As there is no reason to believe that this court will reverse the positive opinion it has already rendered in this case, and as the decision of an appellate court should have been submitted to and followed by the honorable court below, further argu-ment would seem to be unnecessary.

*Richard P. White*, with him *Thomas W. Barlow*, for appellee.— The plaintiff intended to give Pierson the authority to procure a binding recognition of transfers, and gave him the docu-ments to accomplish this end. She vested Pierson with the ap-

parent authority to make the transfers, and the complaint is. not that he had no authority to transfer, but that, having: authority, he exercised it contrary to private instructions of. which the company had no knowledge.

If an agent be intrusted with the continued possession of a bond or evidence of debt, authority for him to receive pay-- ment may be implied. . . . The authority is implied from pos- session of the papers: Hatfield v. Reynolds, 34 Barb. 612;. Gilbert v. Deshon, 107 N. Y. 324; Crane v. Greenewald, 120· N. Y. 274; O'Connor v. Clark, 170 Pa. 318.

But in Penna. R. Co.'s Appeal, 86 Pa. 80, we have a case on. all fours with the one under consideration.

OPINION BY W. D. PORTER, J., April 23, 1900:

This case was here before upon an appeal from a judgment. entered by the court below in favor of the defendant, upon de- murrer to plaintiff's statement, and is reported in 9 Pa. Superior· Ct. 233. It was then held that the statement did not admit the agency of Clayton W. Pierson in the business in which the· fraud was committed, and that it denied that he was in any way authorized by plaintiff to make any other disposition of the poli- cies in question than to have the transfers duly noted upon the· plaintiff's book's. That the statement did allege his agency as a. broker in bringing the exchanging parties together, but his rela-- tion to the parties ended when that transaction was completed by exchanging the title papers. The statement further alleged that the company, without requiring any evidence from Clayton W. Pierson that he was the assured or otherwise legally enti- tled to claim the said deposit money, but, upon his wrongful demand thereof, negligently transferred and paid to him, and the judgment upon the demurrer was reversed.

The case has been tried and all the facts connected with the transaction have been fully brought out, and the question now recurs under circumstances essentially different. Clayton W. Pierson, acting as broker for the plaintiff, negotiated an ex- change of certain of her property for certain properties of Alex Simpson, Jr., Esq., situated in the city of Philadelphia, and the transaction had proceeded so far that the parties were ready for the exchange of deeds and evidences of title. Upon May 29, 1896, the parties met at the office of Mr. Simpson,

the deeds were there exchanged, and Mr. Simpson delivered to John M. Vanderslice, Esq., the husband of plaintiff, who represented her in the transaction, ten perpetual policies of insurance upon the property which he had conveyed to plaintiff. These policies had been assigned by Mr. Simpson and all other parties who had an interest in same, leaving the name of the party to whom they were assigned blank, and the signatures of the assignors of the policies had been duly attested. All the policies had been issued by the defendant company. The evidence establishes beyond question that Mr. Vanderslice was authorized to represent his wife in the entire transaction, and that his acts in the premises were binding upon her. The commissions due Pierson on the transaction were at this meeting paid to him on behalf of the plaintiff. Mr. Vanderslice called attention to the fact that the transfer of the policies should be noted on the books of the company at once, but that he did not have time to attend to it as he was anxious to get back to the bedside of his mother, who was very ill, and he testified as follows : " Q. You say that Mr. Pierson, on your statement that you could not attend to it yourself, volunteered to do it? A. He did. Q. And you handed him the policies ? A. Yes, sir. I then said to Mr. Simpson, ' Well, if Mr. Pierson will attend to it, I will leave them with him.' Q. They were handed to him for the purpose of having the transfer noted upon the books of the company? A. Yes, sir. Q. As you did not have time to do it yourself, he should do it for you? A. Yes, sir." The policies, with their various assignments, offered in evidence, showed conclusively that before this transfer could be made it was necessary to fill in the name of the person to whom they were assigned ; an essential part of the duty, therefore, of procuring the transfer on the books of the company was to fill in these blanks, and before Pierson could have procured the transfer which he was authorized and directed to have made, it was necessary that he should fill in the blank assignments which had been delivered to him. There can be no question upon this state of facts that Pierson was the agent of the plaintiff, specially delegated to fill in the blanks in those assignments, and to have the same noted on the books of the defendant company : Insurance Company v. Roth, 118 Pa. 329. Pierson, having received the policies, wrote his own name in the blank

for the assignee, and thus it appeared upon the face of the policies that he had succeeded to the rights of Mr. Simpson and had become the owner of the policies. With the policies in this condition he presented them to the defendant company and demanded a return of the deposit money, which he was entitled to do under the terms of the contract of insurance. There is nothing whatever in the evidence which could visit the defendant company with notice of the fraud which Pierson was practicing upon the party whom he represented, and there is no evidence that the defendant had any notice that the plaintiff had any interest whatever in the policies. The defendant company paid the money to Pierson upon the faith of the assignments, and the plaintiff now seeks to recover it over again, upon the ground that the act of Pierson in transferring the policies to himself was fraudulent. When the plaintiff, at the trial, offered these policies, with their assignments, in evidence, they constituted evidence of payment in full by the company to the proper party. The burden was upon the plaintiff to rebut the prima facie defense thus presented by proving not only that the assignments were fraudulently procured, but that the company, before paying the money on the faith of the assignments, had notice of that fact. There is no evidence whatever that the company had notice of any facts which could have given rise even to suspicion in the entire transaction. The plaintiff had placed the policies in the hands of her agent in a condition which enabled him to transfer the policies to any person whom he might select. She trusted him as her agent, and gave him the power to perpetrate a fraud, and it was her misplaced confidence which caused this loss. Where one of two parties who are equally innocent of actual fraud must lose, the one whose misplaced confidence in an agent or attorney has been the cause of the loss shall not throw it on the other: Pennsylvania Railroad Company's Appeal, 86 Pa. 80. A principal is bound by all the acts of his agent within the scope of the authority which he held him out to the world to possess, notwithstanding the agent acted contrary to instructions: Brooke v. R. R. Co., 108 Pa. 529; Adams's Express Company v. Schlessinger, 75 Pa. 246; Tanner v. R. R. Co., 53 Pa. 411; Butler v. Maples, 76 U. S. 766. A bona fide purchaser of a chose in action, not negotiable, or other property, from one on whom the owner

445, (1900.)] Opinion of the Court.

has conferred the apparent ownership, obtains a valid title as against such owner, although his vendor had no such title: O'Connor v. Clark, 170 Pa. 318; Moore v. Metropolitan National Bank, 55 N. Y. 41; McNeil v. Tenth National Bank, 46 N. Y. 325. The facts in the present case were undisputed, and when the court gave binding instructions in favor of the defendant, it was merely a special application of the broad equitable rule that where one of two innocent persons must suffer loss by reason of the fraud or deceit of another, the loss should fall upon him by whose act or omission the wrongdoer has been enabled to commit the fraud.

Judgment affirmed.

ORLADY, J., dissents.