## Peters *v.* Alter, Appellant.

*Mortgages—Forgery of satisfaction piece—Payment to attorney— Embezzlement—Principal and agent—Agency—Evidence.*

On an appeal from the refusal of the lower court to open a judgment entered on a bond secured by a mortgage, it appeared that defendants' successor in title had repaid the loan to plaintiff's attorney and that the attorney had satisfied the mortgage under a forged satisfaction piece purporting to have been signed by plaintiff. There was no evidence that plaintiff did anything to lead defendants or their successor in title to believe the attorney had been given authority to accept payment of the principal. The attorney had no authority, written or oral, to receive the principal and satisfy the mortgage, and did not have custody of the bond and mortgage. At the time of payment the attorney was not asked to produce his authority to satisfy the mortgage, nor was surrender of the bond and mortgage demanded.

Under such circumstances, the trial court did not abuse its discretion in refusing to open the judgment.

The record of the satisfaction of the mortgage is not such a judicial record as to import verity, and thus prevent the court from treating it as a forgery even on plaintiff's uncorroborated testimony.

The act of an agent is the act of his principal, so long as it is within the scope of the authority delegated, but a delegation of certain specific powers gives no authority to bind the principal generally. The burden is upon him who seeks to avail himself of the acts of an agent, in order to charge the principal, to prove the authority under which the agent acted, to establish the agency and the extent thereof.

It is the duty of a mortgage debtor to see that the agent, to whom he pays the principal, not only has possession of the evidences of indebtedness but can also show express authority to receive it.

Where one of two innocent parties must suffer by reason of the fraud or deception of another, the loss should fall on him by whose act or omission the wrongdoer has been enabled to commit the fraud.

Argued April 21, 1926.   Appeal No. 190, April T., 1926, by defendants, from decree of C. P. Westmoreland County, May T., 1924, No. 1386, in the case of Amanda Z. Peters v. W. Riley Alter and Mary Ashe Alter.   Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.   Affirmed.

Rule to open judgment entered on a bond accompanying a mortgage.   Before COPELAND, P. J.

The facts are stated in the opinion of the Superior Court.

The court refused to open the judgment.   Defendants appealed.

*Error assigned,* among others, was the order of the court.

*Benjamin H. Thompson,* and with him *Rabe F. Marsh,* for appellants.

*Charles C. Crowell,* for appellee.

OPINION BY CUNNINGHAM, J., July 8, 1926:

The appeal in this case is from an order of the Court of Common Pleas of Westmoreland County, refusing to open a judgment entered April 28, 1924, by Amanda Z. Peters against W. Riley Alter and Mary Ashe Alter, his wife, upon a bond secured by a mortgage of even date therewith and containing a warrant of attorney for the confession of judgment thereon.

During the course of the proceedings in the court below, and pending the final determination of the case, the defendants paid into court a sufficient sum of money to cover said judgment with interest and costs and by order of court the lien thereof was discharged as to the property of the defendants, thereby eliminating from further consideration all questions with

respect to the extent of the liability of Mary Ashe Alter, the wife of the real debtor, W. Riley Alter.

From an examination of the pleadings and testimony it appears that the circumstances leading up to the entry of this judgment were as follows: William F. Wegley, a former member of the bar of Westmoreland County, was a partner in the law firm of Williams, Wegley and Doran. Amanda Z. Peters, plaintiff in the judgment and appellee in this court, became acquainted with Wegley and the other members of said firm about fifteen years ago when they acted as attorneys in the settlement of the estates of her father and mother.

Upon six or seven different occasions, beginning about 1910, Wegley asked Mrs. Peters to place in his hands various sums of money to be invested by him in bonds and mortgages. The evidence indicates that Mrs. Peters did not come to Wegley for the purpose of establishing the relationship of attorney and client or employing him to invest her money, but rather that Wegley sought out Mrs. Peters when he had an application for a loan and requested her to furnish the money. In no instance, so far as disclosed by the evidence in this case, did Mrs. Peters pay Wegley for placing her money for her but his fees and commissions were paid by the person applying to him for the loan.

Mrs. Peters and her husband, who frequently acted for her, did however rely upon Wegley to examine the property offered as security and the title thereto and to see that the interest was paid. Shortly before May 6, 1916, W. Riley Alter, the principal defendant in said judgment and one of the appellants in this court, applied to the said Wegley for two loans of $2,000 each, to be secured by separate mortgages upon two lots owned by him in Arnold Borough, Westmoreland County. Wegley inquired of Mrs. Peters' husband whether she had the money and, being informed that it

was available, an examination was made by him of the property and the title and bonds and mortgages were prepared from Alter and his wife to the said Amanda Z. Peters, each in the sum of $2,000 real debt, payable in three years, and Alter paid Wegley "the usual commission."

The mortgage securing the bond involved in this proceeding was given upon lot No. 953, Block 30 of the Kensington Improvement Company's plan of lots in said Arnold Borough and was recorded in Mortgage Book Vol. 297, at page 438. Appellants also duly executed and delivered to Wegley the bond accompanying said mortgage. At the same time another bond, payable to the said Amanda Z. Peters, in like amount and secured by a mortgage to her on lot No. 957 in said block and plan was executed by appellants and delivered to Wegley. After the recording of said mortgages they and the accompanying bonds were delivered by Wegley to the appellee and the bond and mortgage on said lot No. 953, with which alone we are concerned in this case, remained continuously in her possession until the institution of these proceedings.

On May 1, 1923, appellants conveyed said lot to Maria Bon Giovanni for a consideration of $3500 and as a part thereof the said grantee assumed and agreed to pay said mortgage. On May 10, 1923, one, Vinzenzo Colaianni, acting as agent for said grantee, advised the said W. Riley Alter that she was ready to pay said mortgage and inquired who had it. Alter told said Colaianni that Wegley had it and added, "Pay me or pay Mr. Wegley. It makes no difference." Thereupon the said Colaianni went to the law offices of said firm and delivered to said Wegley his own check in the sum of $2,000, drawn to the order of said firm, in payment of said mortgage, which check was duly paid to Wegley.

On the same day Wegley, who was also a notary

public, left for record in the recorder's office of Westmoreland County a satisfaction piece dated as of that date and purporting to have been signed by the said Amanda Z. Peters and acknowledged before and witnessed by him, setting forth that she had received payment in full of said mortgage, which satisfaction piece was recorded in Mortgage Book Vol. 366, page 138, and mailed to said firm of Williams, Wegley and Doran. This paper has not been found. The money paid to the said Wegley in satisfaction of said mortgage was never paid by him to the said Amanda Z. Peters and the said satisfaction piece had not been signed or acknowledged by her, nor did she ever authorize or ratify it. Throughout these transactions appellants never met, or had any communication with, the appellee. Although said mortgage had apparently been satisfied by said forged satisfaction piece on May 10, 1923, the said Wegley wrote Mrs. Peters a letter under date of March 1, 1924, enclosing a check payable to her order for $750, being the interest on five mortgages owned by her and placed by him up to certain specified dates. Included in this amount was the sum of $120 for interest on the mortgage now in question up to November 6, 1923.

Appellee did not learn of the alleged satisfaction of her said mortgage until April, 1924, and promptly thereafter entered the said judgment on said bond. Upon the filing of appellants' petition to open said judgment and of the answer of appellee thereto, James B. Weaver, Esq., was appointed a commissioner to take testimony, find the facts and report the same with an opinion, it being agreed by counsel for the parties that the testimony should be considered as taken in open court or before a judge thereof.

The said commissioner in his findings of fact found, inter alia, that neither said Wegley nor the law firm of which he was a member was the agent of appellee in

receiving the money paid in satisfaction of said mortgage and that appellee "did not directly or indirectly lead, cause or authorize" the said Colaianni to pay said money to Wegley, and recommended that the rule to open the judgment be discharged and the petition dismissed. Exceptions to said report were duly filed and considered by the court below, which court thereupon filed an opinion and decree dismissing the exceptions, confirming the commissioner's report and discharging the rule, and from this decree we have the present appeal.

The assignments of error, although eleven in number, raise the single question whether the court below erred in dismissing the exceptions to the commissioner's report and approving his conclusions to the effect that the principal sum in question, with interest from November 6, 1923, had not been paid to appellee, or to anyone authorized to receive it for her; that the alleged satisfaction piece was a forgery; and that nothing therefore had been shown to relieve the appellants from their obligation under said bond.

In disposing of this case it is proper to keep in mind that an application to open a judgment of this kind is an equitable proceeding addressed to the discretion of the court; that the judge to whom it is addressed acts as a chancellor; and that appellate courts examine the record only to determine whether this discretion has been properly exercised: Kelber v. Plow Co., 146 Pa. 485; Toffolo v. Marino, 77 Pa. Superior Ct. 281. In Shannon v. Castner, 21 Pa. Superior Ct. 294, this court held that even when the evidence is conflicting there is no inflexible rule which compels the court to open the judgment and that in such a case the court should exercise a sound discretion after a careful consideration of the character and effect of the testimony.

Appellants contend under their fifth assignment of error that this case should have been sent to a jury be-

cause the record in the mortgage book was prima facie evidence that the satisfaction piece had been duly executed and acknowledged by the appellee and that it was error for the court below to treat it as a forgery upon the uncorroborated evidence of the appellee. In the first place the testimony of the appellee was corroborated by the circumstance that Wegley continued to pay her the interest on the mortgage subsequent to the date of its alleged satisfaction and in the letter above referred to represented to her in effect that the mortgage had not been satisfied.

Again, the record referred to is not such a judicial record "made up under the eye of the judge in the presence of the parties, and after they have been heard" as imports verity, Fleming v. Parry, 24 Pa. 47.

In the next place the learned counsel for appellants contend under their fourth and remaining assignments of error that although the evidence may not show express or specific authority in Wegley to receive payment of this particular mortgage, yet "the general agency as shown by the testimony in this case would include this particular transaction." Their contention is that there was sufficient evidence of an implied agency in Wegley, to act for the appellee in receiving the principal of this mortgage, to require the submission of the case to a jury. The only inference deducible from all the testimony with respect to the satisfaction piece is that it was a forgery and there is no suggestion that Wegley had a warrant of attorney to satisfy the mortgage. The mere fact that he was an attorney at law gave him no more authority to satisfy the mortgage than would be possessed by any other individual, and this would be equally true even if the evidence were conclusive that the relationship of attorney and client existed between him and the appellee. That the debt secured by the bond and mortgage was paid to Wegley in behalf of the owner of the property bound

by the lien of the mortgage is beyond question. Aside therefore from the question of the satisfaction of the mortgage, if Wegley had authority to receive this payment as the agent of the appellee the debt has been paid to her and the judgment should be opened.

The rule applicable to the situation arising in this case is thus expressed in the syllabus of the case of Beal and Simons v. The Adams Express Co., 13 Pa. Superior Ct. 143: "The act of an agent is the act of his principal so long as it is within the scope of the authority delegated, but a delegation of certain specific powers gives no authority to bind the principal generally. The burden is upon him who seeks to avail himself of the acts of an agent, in order to charge the principal, to prove the authority under which the agent acted, to establish the agency and the extent thereof."

Appellants endeavor to meet the burden thus imposed upon them by referring to the general course of dealing for a period of approximately fifteen years between the appellee and Wegley, referred to in the earlier portion of this opinion, and rely particularly upon the testimony of the appellee to the effect that in the instance of a certain loan of her money made in 1910 by Wegley to the same W. Riley Alter in the amount of $3000, the proceeds of that particular mortgage were paid to her through Williams, Wegley and Doran, and that in the case of the other mortgage given by appellants upon the other lot, No. 957, at the same time the mortgage directly involved in this proceeding was given, the proceeds of this other mortgage were paid through Wegley, and that she at his instance executed a satisfaction piece on October 31, 1923, for this mortgage, which was acknowledged before Wegley and witnessed by her husband, and then permitted Wegley to transfer the mortgage to another property.

In support of their contention that the disputed facts

relative to Wegley's alleged agency should have been submitted to a jury they cite as their leading case Colonial Trust Co. v. Davis, 274 Pa. 363, which holds that the evidence in that case was, sufficient to support a finding by a jury that the agent of the mortgagee to whom the proceeds of the mortgage were paid had authority to receive such payment. The learned counsel for the appellee contends, on the other hand, that Mynick v. Bickings, 30 Pa. Superior Ct. 401, and kindred cases are the authorities applicable to the facts in this case. The facts in Mynick v. Bickings are practically identical with the facts in the present case. In the case cited the appellant applied to an attorney for a loan, which the attorney promised to procure for him, and the appellant agreed to pay him $20 for his services. The money was obtained from the appellee and appellant executed a bond and mortgage to her for the amount borrowed. Interest was paid from time to time to the attorney and $500 was paid to him on account of the principal, which amount the attorney never paid over to the appellee, nor had she knowledge that it had been received by him until some time after it had been paid. It was not claimed that the bond and mortgage were placed in the attorney's hands for collection or that he had express authority to receive payments thereon. As in the present case, the bond and mortgage had been delivered to the appellee and were not in the possession of the attorney at the time the payment of principal was made. In the course of the opinion of this court, written by HENDERSON, J., the following appears: "The right to the credit is not claimed by way of estoppel because Jones [the attorney] was held out to the appellant by the plaintiff as her agent, but because of an undefined employment in connection with loans made by her to other persons. This employment was sought to be shown by an offer to prove that Jones was

the agent of the plaintiff in loaning money on mortgage and judgment and the collection of the principal as well as the interest on those loans 'and that this course of dealing continued through their whole connection with him.' It was not proposed to show that the plaintiff was engaged in loaning money as a business or that Jones was her agent, generally. The argument is that if the plaintiff allowed or employed Jones to collect money on loans made by her and pay the same to her, such action invested him with authority to receive and receipt for principal or interest on any bond or mortgage which she held, without express authority from her so to do; and in this view of the case, it would not seem to make any difference whether the number of loans was large or small. The act of Jones with reference to two or three loans would commit the plaintiff to responsibility for his conduct with reference to the one now under consideration or others which may have been made by the plaintiff. The mere fact that the attorney acted as a conveyancer in the transaction between the plaintiff and defendant did not invest him with authority to collect the debt. The obligations were given to the plaintiff. This the appellant well knew. They were not in the possession of Jones at any time when payments were made. The defendant had not been requested to make payments to Jones, nor had the plaintiff held out the latter as having authority to receive payments on the debt. Relying on his integrity and apparently to avoid the inconvenience of finding the plaintiff and paying her, he gave the money to Jones to be paid over. In so doing he assumed the risk that Jones might not act in good faith. If, at the time the payments were made, the bond and mortgage had been in Jones' possession such possession would have been evidence of his control of the obligations. The debtor

might have made himself secure by insisting on the production of the obligations and having the payments indorsed thereon. Generally speaking, it is the duty of a debtor, who is bound by an obligation in writing, to see that the person to whom he pays the money for his creditor has possession of the evidence of indebtedness, unless he can show express authority in the person to whom the payment is made to receive the money. Loans made by the plaintiff were independent transactions completed when the security was delivered and the money paid. The completion of one transaction would not invest the attorney with power to act in another outside of the express authority given him or that implied in his engagement as an attorney in professional business. Nor did the fact that payments of interest were received from time to time and accepted by the creditor imply that he had authority so to receive them. When the money was paid to the creditor the debtor received credit for the payment, but any other person might have handed the money to the creditor with the same effect as when done by the attorney through whom the loan was effected: Williams v. Walker, 2 Sandf. Ch. 325; Smith v. Kidd, 68 N. Y. 130; Story on Agency, secs. 98, 104; Haines v. Pohlmann, 25 N. J. Eq. 179. The position of an investor would be most precarious if the fact that he employs an attorney from time to time when making loans and authorizes him to make collections of interest, and in special cases of the principal due on securities, is sufficient to warrant a finding of authority generally to collect the principal of all his client's mortgages and that, too, when the latter keeps possession of his obligations.''

To the same effect is the case of Fischer v. Hale, 63 Pa. Superior Ct. 204, in which it is said that, ''It is the duty of a debtor, bound by an obligation in writing, to see that the person to whom he pays money for his

credit has authority to collect the money. The declarations of the supposed agent would not be sufficient until there is some evidence tending to show that he has such authority. If such direct evidence be lacking, then the person claiming such authority should have possession of the evidence of indebtedness, which would give color of authority.'' See also Pepper v. Cairns, 133 Pa. 114. A still stronger case against appellants is Browne, et al., v. Hoekstra, 279 Pa. 418, in which it is held that creating one an agent to receive payment of interest due on a mortgage does not make him an agent to receive payment of principal and in which our Supreme Court in concluding its opinion said, ''We desire to admonish those who deal with agents claiming to be authorized to receive the principal of mortgages, that the mere possession of the mortgage papers is not sufficient to establish agency, and to call attention to the fact that a mortgagor before paying his indebtedness to an agent can fully protect himself by demanding the exhibition of a power of attorney authorizing the receipt of the principal or by inquiry from the mortgagee as to whether payment to the agent is authorized.''

Referring again to the case of Colonial Trust Company v. Davis, supra, relied upon by appellants, it is to be noted that the mortgagee in that case was a trust company doing business in the city of Reading and had as its representative in making loans for it on real estate situated in the city of Wilkes-Barre one Larned, a real estate and insurance agent. It was admitted that Larned had authority to place money at interest on behalf of the mortgagee and during a period of fourteen years had made loans for it in the aggregate amount of $253,000. It was not disputed that Larned collected interest from mortgagors and frequently payments of principal and the secretary and treasurer of the mortgagee testified that payments on account

of principal usually came through Larned and that his
company had no office or place of business in Wilkes-
Barre except through Larned.   The proceeding in that
case was a scire facias sur mortgage and the defense
was payment in full of principal and interest to
Larned, "the duly authorized agent to receive payment
for plaintiff." Larned having failed to pay over to the
plaintiff the amount collected and his authority to re-
ceive the payment on plaintiff's behalf being denied,
the trial judge submitted the question to the jury who
found Larned received the payment as plaintiff's
agent.   In delivering the opinion of our Supreme
Court Mr. Justice FRAZER said, "While the mere fact
of Larned's employment to make mortgage loans, pre-
pare necessary papers and attend to the settlement
would not vest in him authority from the mortgagee
to collect the principal of the mortgage, we find ample
in the foregoing recital of the facts touching the course
of dealing between him and plaintiff to warrant the
conclusion that his authority extended beyond the mere
making of loans and included the power to receive both
principal and interest on behalf of plaintiff.   The
distinction between this case and those relied on by
plaintiff, of which Mynick v. Bickings, 30 Pa. Superior
Ct. 401, is an illustration, was correctly noted in the
opinion of the court below and is based on the fact
that we have here evidence of a general course of deal-
ing covering a long period of time during which plain-
tiff not only made all of its loans in that particular
locality through Larned's office, but by its conduct
vested him with apparent authority to receive pay-
ments on account of both principal and interest."

In our opinion this case is clearly distinguishable,
under the facts, from the case at bar.   It should be fur-
ther noted in the present case that, as between Mrs.
Peters and Alter, there was no authorization, request,
suggestion or permission from her to him to have the

money paid to Wegley, nor was there any ratification by her of such payment, nor did Alter ever demand the return of his bond and mortgage or instruct Colaianni to require the production by Wegley of any authority to receive payment.

We have probably discussed the questions arising upon this appeal in greater detail than under the authorities we are required to do for the purpose of ascertaining whether there has been any abuse of discretion by the court below, but as it is a case in which both parties to the issue are innocent of any intentional wrongdoing and yet one of them must suffer through Wegley's embezzlement, we have given careful consideration to all the evidence in order that the rule of law applicable to the situation here arising may be properly applied to the facts. That rule, as stated in Froio v. Armstrong, (No. 1), 277 Pa. 18, and Browne v. Hoekstra, supra, is that, "Where one of two innocent parties must suffer loss by reason of the fraud or deceit of another, the loss should fall on him by whose act or omission the wrongdoer has been enabled to commit the fraud."

Under all the facts disclosed by the evidence in this case, we are of opinion that the commissioner and the court below were fully justified in concluding that the loss must fall on appellants. We are also satisfied that there was no abuse of discretion by the court below in refusing to open the judgment.

The assignments of error are dismissed and the decree affirmed.