## Ferree v. Gilmore et al.

*Agency—Attorney—Collection of principal of mortgage—Embezzlement—Two innocent persons—New trial—After-discovered evidence.*

1. The court has power to allow motions and reasons for a new trial to be filed *nunc pro tunc.*

2. A motion for a new trial on the ground that evidence has been discovered since the trial from an unexpected source must be accompanied by an affidavit giving the names of the witnesses and what is expected to be proved by them.

3. One who moves for a new trial on the ground of newly-discovered evidence must satisfy the court that it came to his knowledge since the trial; that it was not owing to a want of due diligence that it did not come sooner; and that if a new trial were granted, a different verdict would probably result.

4. Where an attorney, who is the agent of the mortgagor in procuring a loan, embezzles the money raised by the mortgage after it is delivered by him, the rule applies that where one of two innocent persons must suffer loss, the one must bear it who, by any act of commission or omission, put the means to perpetrate the fraud into the hands of the wrongdoer.

Rule for new trial. C. P. Westmoreland Co., May T., 1925, No. 260.

*H. E. Cope,* for plaintiff.

*Glen N. Machesney* and *Horace G. Durbin,* for defendants.

COPELAND, P. J., April 29, 1927.—This case arose over a *scire facias sur* mortgage recorded in Mortgage Book, vol. 300, page 462, of the records of Westmoreland County, Pennsylvania. This mortgage was given by Bessie May Gilmore to Ollie J. Ferree, dated Jan. 25, 1917, conditioned for the payment of $2500. The property bound by this mortgage was conveyed later by the mortgagor to Ezbon E. Polliard, who paid the debt, interest and costs of this mortgage to William F. Wegley. The amount thus realized, it seems, did not come into the possession of the mortgagee. An affidavit to this *scire facias* was filed, in which it is stated, in the third paragraph:

"Third. That the said Bessie May Gilmore delivered said mortgage and the accompanying bond to William F. Wegley, a member of the firm of Williams, Wegley & Doran, of the Borough of Greensburg, Westmoreland County, Pa., attorneys and agents for the said Ollie J. Ferree, and received the proceeds of said mortgage from the said attorneys and agents of the said Ollie J. Ferree, and, until the date of the conveyance to Ezbon E. Polliard above referred to, the said Bessie May Gilmore paid all interest due upon said mortgage to the said attorneys and agents of the said Ollie J. Ferree.

"Sixth. That, on or about June 10, 1919, the said Ezbon E. Polliard paid or caused to be paid to Williams, Wegley & Doran or William F. Wegley, attorneys and agents for the said Ollie J. Ferree, the sum of two thousand five hundred and fifty-two (2,552.42) 42/100 dollars, being debt, $2500.00, interest, to June 12, 1919, $50.42, and the cost of satisfaction, $2.00, in full satisfaction of the above stated mortgage.

"Seventh. That the said Williams, Wegley & Doran or William F. Wegley, attorneys and agents for the said Ollie J. Ferree, received the above sum of $2552.42 in full satisfaction of the above stated mortgage and made a notation upon the files of said attorneys and agents as follows:

Ferree *v.* Gilmore et al.

" 'June 11, 1919, received check of Ezbon E. Polliard vendee of Bessie May Gilmore, Mortgagor for the debt, interest and satisfaction fee of this mortgage as follows: Debt $2,500.00, interest, balance to June 12-19, $50.42, satisfaction $2.00, total $2,552.42.' "

To this affidavit of defence the plaintiff filed a reply, denying the allegations set forth in the third, sixth and seventh paragraphs of the affidavit of defence, as well as all matters therein set forth, and as a further defence, denied that William F. Wegley was her agent or had any authority whatever to act for her in the receipt of the whole or any part of the debt or mortgage or to satisfy the same. The reply further set forth that she at all times had and yet has in her possession the said mortgage and had possession of the bond until she entered the same of record, at No. 10, May Term, 1924, and that no demand had been made upon her for the surrender of either the bond or mortgage by the defendants in this case. With the issue thus framed, the case came regularly on for trial, with the result that the jury found a verdict in favor of the plaintiff for the full amount of her claim.

It appeared from the evidence at the time of trial that the property bound by the mortgage of Bessie May Gilmore to Ollie J. Ferree was conveyed by her, the mortgagor, to Ezbon E. Polliard, subject to this mortgage. No doubt was expressed as to the fact that Ezbon E. Polliard paid this mortgage, including debt, interest and costs, to William F. Wegley, as alleged in the affidavit of defence, on June 10, 1919. The real questions that arose during the trial of the case were: Whose agent was William F. Wegley in lending Ollie J. Ferree's money to Bessie May Gilmore; whose agent was he in receiving the money, in satisfaction of the Bessie May Gilmore mortgage, from Ezbon E. Polliard? These questions, in both instances, were resolved by the jury, on June 8, 1926, in favor of the plaintiff, that William F. Wegley was acting as agent for both the defendants, Bessie May Gilmore and Ezbon E. Polliard.

A motion and reasons for a new trial were filed on July 7, 1926, requesting the court to allow this motion *nunc pro tunc* as of the date of June 9, 1926. To the rule for a new trial, an answer was filed denying every averment contained in the motion and reasons for a new trial. This matter now comes up to the court to determine whether a new trial should be granted.

We have no trouble about the fact that the court has power to allow the motion and reasons for a new trial to be filed *nunc pro tunc*. That question was settled in Lance *v.* Bonnell, 105 Pa. 46. It was said in that case by Mr. Justice Clark, in delivering the opinion of the court (page 47):

"The rule of practice in the court below required that the motion for a new trial should be submitted within four days from the rendition of the verdict, and until after the expiration of that time, judgment could not be entered. It must be conceded, however, that it was competent for the court, upon a proper showing, to waive the limitation imposed by its own rule of practice. The allowance of the motion . . . which was the date of the rendition of the verdict *nunc pro tunc*, simply dispensed with or waived the restriction of the rule. It is true that a judgment had been regularly entered upon the verdict, but, as the term had not yet expired, the judgment was as much under the control of the court as the verdict; the whole term, excepting for the rules of practice, is considered as but one day, and the judges may, at any time within the term, revise its judgments; the record is incomplete until the term is ended. . . .

"If, then, it was competent for the court to entertain the motion *nunc pro tunc*, the effect of that motion, when made, it must be conceded, is precisely

the same as if made at the proper time. This was the import and purpose of the motion, and the court certainly could not have intended that it should have other than that effect.

"It was equivalent to an amendment of the record, and must be so considered. The motion having been made within the term, no objection can be made that it was not finally disposed of until a subsequent term."

This case, we think, clearly disposes of the questions of whether it is right to allow the motion at this time.

The reasons given for the new trial are as follows:

"First: Since the trial of the above case, and since the time for filing a motion for a new trial has elapsed, the defendant has discovered evidence material to his defence of the above case, from an unexpected source, which was impossible for him to have discovered prior to the former trial, as follows:

"a. The mortgage from Bessie May Gilmore to Ollie J. Ferree, dated Jan. 25, 1917, and recorded in Mortgage Book 300, page 462, was executed and delivered so that the proceeds therefrom should be applied to the satisfaction of the mortgage given by Bessie May Gilmore et al. to John W. Steele and Sarah May Foster, dated Oct. 10, 1913, and recorded in Mortgage Book 268, page 430.

"b. That the mortgage given to John M. Steele et al. was satisfied by Satisfaction Piece dated July 24, 1918, and recorded July 25, 1918.

"c. That John M. Steele and Sarah May Foster, since the trial of the above case, have attempted to collect the debt and interest of the said mortgage, alleging that the same remains unpaid and owing to them, and that the above Satisfaction Piece was not signed by them, but is a forgery.

"d. That the above mortgage to Ollie J. Ferree is without consideration, was procured by fraud, and is void.

"e. That the above evidence has been discovered since the trial from an unexpected source, and it was impossible for the defendant in this case to discover the same before the trial.

"Second: In case the verdict in this case is allowed to stand, a grave injustice will be done to this defendant."

All these matters, as we have said, are fully denied in the answer to this motion.

From these reasons for a new trial, it appears that Bessie May Gilmore et al. had given a mortgage to John M. Steele and Sarah May Foster, dated Oct. 10, 1913, recorded in Mortgage Book 268, page 430, and that mortgage given by her to Ollie J. Ferree, dated Jan. 25, 1917, recorded supra, was executed and delivered so that the proceeds therefrom should be applied to the satisfaction of the mortgage given by her to John M. Steele and Sarah May Foster; that, although the John M. Steele and Sarah May Foster mortgage was satisfied by a satisfaction piece dated July 24, 1918, and recorded July 25, 1918, it now is alleged that it never was paid; that the mortgage given by Bessie May Gilmore to Ollie J. Ferree, the plaintiff in this case, was without consideration, was procured by fraud, and, therefore, void, for the reason that John M. Steele and Sarah May Foster, since the trial of this case, are attempting to collect the debt and interest of the mortgage given by Bessie May Gilmore et al. to them, which, although satisfied by a satisfaction piece, still remains unpaid, for the reason that the satisfaction piece was not signed by them but is a forgery. The reasons further set forth that Ezbon E. Polliard, if this verdict is allowed to stand, will be compelled to pay this mortgage three times. He already has given the money to William F. Wegley to satisfy the

Ollie J. Ferree mortgage, he will have to pay the Ollie J. Ferree mortgage again, and will have to pay the John M. Steele and Sarah May Foster mortgage if the satisfaction piece is declared a forgery.

This is a hard case and one of the many hard cases that arose out of the embezzling by William F. Wegley of nearly a million dollars of his clients' money. The thing that is troubling the court is how Bessie May Gilmore now can come into this court and say that this mortgage given by her to Ollie J. Ferree is without consideration in the face of the affidavit of defence to the *scire facias* on that mortgage and in the face of her own testimony. Ezbon E. Polliard, in the third paragraph of his affidavit of defence, said: "That the said Bessie May Gilmore delivered said mortgage and the accompanying bond to William F. Wegley, a member of the firm of Williams, Wegley & Doran, of the Borough of Greensburg, Westmoreland County, Pa., attorneys and agents for the said Ollie J. Ferree."

If there is anything that is plain from this affidavit of defence and from the testimony of Bessie May Gilmore, it is the fact that she received the consideration money for this mortgage, and if these defendants should come into court now, in a new trial, and testify directly opposite to what was set forth in their affidavit of defence and this testimony, we are of the opinion that this testimony would be given little weight by the jury.

In the first reason, paragraph *(e)*, of the motion for a new trial, it is set forth: "*(e)* That the above evidence has been discovered since the trial, from an unexpected source, and it was impossible for the defendant in this case to discover the same before the trial."

This is not in compliance with the rules of court. What is the unexpected source and who is the witness who now is to testify to some indefinite thing not mentioned? What is his or her name and what is it he or she will say if called? Taking all the reasons assigned in the motion for a new trial, there is nothing in any one of them or all together that would warrant the court in granting a new trial on after-discovered evidence.

It is well settled that a motion for a new trial on the grounds of after-discovered evidence must be accompanied by an affidavit of the names of the witnesses and what they are expecting to prove. A new trial will not be granted on the ground of after-discovered evidence if the evidence might have been produced at the trial by the exercise of due diligence. It is incumbent on the party who moves for a new trial on the ground of newly-discovered evidence to satisfy the court that it came to his or her knowledge since the trial; that it was not owing to want of due diligence that it did not come sooner, and that if a new trial were granted, a different verdict would probably take place: Benedict *v.* Pennsylvania Coal Co., 6 Kulp, 221; Moore *v.* Philadelphia Bank, 5 S. & R. 40; Norton & Co. *v.* Breidenbach, 1 Pearson, 467.

As we study the application for a new trial, the question again would arise, whose agent was William F. Wegley in the receipt of the money from Ezbon E. Polliard? That question was squarely decided once by a jury, and we think properly so, under the evidence, and should not now again be submitted to a jury upon the showing made in the motion and reasons for a new trial.

Here, in this case, according to the testimony, Bessie May Gilmore applied to R. G. Shepard, a real estate agent of New Kensington, to borrow money upon a mortgage on one of her houses. R. G. Shepard went to William F. Wegley, who was in the business of lending money for clients, and, upon his agreement to lend the money, she executed a mortgage and bond in favor of the plaintiff in this case in the sum of $2500. Bessie May Gilmore presumably turned the mortgage and bond over to R. G. Shepard, who, in turn, turned them

over to William F. Wegley. William F. Wegley recorded the mortgage and then, in turn, turned over the bond and mortgage to the plaintiff, who is still in possession of them. Bessie May Gilmore made William F. Wegley her agent when she made application for the money and when she placed the bond and mortgage in his hands to be delivered to Ollie J. Ferree in return for the money represented by the mortgage. Even if she never received the money for this mortgage but left it to William F. Wegley to apply in the satisfaction of the John M. Steele and Sarah May Foster mortgage, he would be Bessie May Gilmore's agent for that purpose, and if he failed to properly apply the money, as was intended by her, it would be her loss and not the loss of the plaintiff in this case. The embezzlement by William F. Wegley of the money which was hers after the delivery of the mortgage and bond would be no defence to the mortgage. This principle is well settled in the case of Pepper v. Cairns, 133 Pa. 114.

There is another principle of law that is applicable to this case, and that is, where one of two innocent persons must suffer loss, the one must bear it who by any act of commission or omission put into the hands of the wrongdoer the means to perpetrate the fraud.

It was said in Peters v. Alter et al., reported in 89 Pa. Superior Ct. 34, on page 47 of the opinion: "We have given careful consideration to all the evidence in order that the rule of law applicable to the situation here arising may be properly applied to the facts. The rule, as stated in Froio v. Armstrong (No. 1), 277 Pa. 18, and Browne v. Hoekstra, 279 Pa. 418, is that 'where one of two innocent parties must suffer loss by reason of the fraud or deceit of another, the loss should fall on him by whose act or omission the wrongdoer has been enabled to commit the fraud.'"

Taking as true everything set forth in the motions and reasons for a new trial, it must appear that Bessie May Gilmore was responsible for this fraud by reason of her omission in not getting the money for her mortgage and bond or in not seeing that proper application was made of it, thus enabling William F. Wegley to commit the fraud perpetrated in this case.

Quite different would have been this case if the defendant, Ezbon E. Polliard, in his affidavit of defence had said that Bessie May Gilmore never had received any money on account of this mortgage, and if she had come into court and testified that she did not receive the money on this mortgage; that she had borrowed this money to satisfy the John M. Steele and Sarah May Foster mortgage; that William F. Wegley was to so apply the funds, but had embezzled them; that William F. Wegley was the plaintiff's general agent in the management of her estate, and that as such he was to see that proper application was made of the money borrowed on the mortgage. Under these circumstances, Bessie May Gilmore would not have been estopped from alleging want of consideration for the mortgage, because then, both in law and in fact, no consideration for the mortgage would have passed and there could have been no recovery.

There is no question in our mind that, as a matter of law, Ezbon E. Polliard, in paying William F. Wegley the mortgage in full and in paying him the interest from time to time, constituted William F. Wegley his agent to deliver the interest and principal to the plaintiff.

In Peters v. Alter et al., supra (page 199), it is said: "Where there is no evidence that the plaintiff did anything to lead the defendant to believe that the attorney had been given authority to accept payment of the principal, and it appears that the attorney negotiated with the plaintiff for the mortgage, but did not represent her, but was paid for his services by the borrower, had

Ferree *v.* Gilmore et al.

no authority, written or oral, to receive the principal and satisfy the mortgage, and did not have custody of the bond and mortgage, and defendant, in making payment to him, did not ask him to show any authority to satisfy or demand surrender of the bond and mortgage, a judgment thereon will not be opened."

Realizing that this is going to be a great hardship on the defendant, Ezbon E. Polliard, if this verdict is allowed to stand, we have given this case the most painstaking, thoughtful and careful consideration, and we are forced to the conclusion that no other result could be reached than that William F. Wegley, through R. G. Shepard, was Bessie May Gilmore's agent in the delivery of the bond and mortgage to him to be delivered to Ollie J. Ferree, and in the application of the money represented by the mortgage, because, as we have said, when she gave William F. Wegley the bond and mortgage, the title to the money in his hands, belonging to the plaintiff in this case, passed to her, and it was her bounden duty to get the money from him or see that proper application was made of it. He was then her agent and she then, by her omission to either get the money herself or see that proper application was made of it, put into his hands the means of perpetrating the fraud and should bear the loss.

And now, to wit, April 29, 1927, after argument and after due and careful consideration, it is ordered, adjudged and decreed that the rule for a new trial be, and the same hereby is, discharged, and that the judgment taken upon the verdict stand.          From William S. Rial, Greensburg, Pa.